2008-NMSC-031

185 P.3d 363

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Steven R. MORELAND, Defendant–Respondent.**

No. 30,301.

Supreme Court of New Mexico.

May 9, 2008.

Gary K. King, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Doerr & Knudson, P.A., Stephen E. Doerr, Portales, NM, for Respondent.

## OPINION

SERNA, Justice.

{1} Today we consider whether the trial court erred when it granted Defendant's motion for new trial (1) fourteen months after it was filed and (2) based on newly-discovered evidence. We hold that, based on the unusual facts and circumstances of this case, Defendant has presented newly-discovered evidence upon which he was properly granted a new trial. We therefore affirm the Court of Appeals.

## I. FACTUAL BACKGROUND AND PROCEEDINGS BELOW

{2} On January 28, 2003, Defendant and his live-in fiancée were high on methamphetamine. She subsequently accused him of attacking her on that day in a variety of ways, including threatening and hitting her with a hatchet, attempting to drown her in the toilet and bathtub, trying to pull off her finger, dragging her around the house with a chain, trying to choke her with toothpaste, and tearing off some of her clothes. Defendant allegedly did all of this with masking tape over his mouth, upon which he had drawn the Joker's smile (a reference to Batman). Defendant was subsequently located by the police and hospitalized for a drug overdose. At the hospital, a physical confrontation arose between Defendant and the police.

{3} The jury convicted Defendant of first degree kidnapping, possession of a controlled substance, use or possession of drug paraphernalia, assault with intent to commit a violent felony on a household member, battery on a peace officer, assault on a peace officer, disorderly conduct, and resisting, evading, or obstructing an officer. He was acquitted of two counts of aggravated battery with a deadly weapon against a household member.

{4} After the verdicts were returned but before sentencing, the trial court committed Defendant to a sixty-day diagnostic evaluation at the Department of Corrections. The state psychologist who evaluated Defendant reported that "when he is under the influence of illicit substances, he experiences an idiosyncratic type of intoxication and engages in hostile behavior, which he would not normally display, if he were not under the influence of an illicit substance." Armed with this information, and represented by new counsel, Defendant underwent a more extensive psychological evaluation by a private psychologist, Dr. Roll.

{5} At the sentencing hearing on February 25, 2004, subsequent to Dr. Roll's evaluation, defense counsel moved for a continuance and stated that he would be filing a motion for new trial based on the two psychological evaluations once he received Dr. Roll's formal report. The trial court vacated the sentencing hearing and ordered Defendant to have it reset upon receipt of Dr. Roll's report.

{6} In his report dated June 18, 2004, Dr. Roll stated that, "[g]iven his background, personality, [and] his history of increasingly disruptive thought process with the use of methamphetamines," there was a strong probability that Defendant, at the time of the incident, "was suffering from diminished capacity which would have interfered with ability for correct perception, intact reality testing, understanding the consequences of his actions, and reasonable capacities to plan and execute meaningfully determined behavior."

{7} The motion for new trial was heard on January 20, 2005. At the hearing, the court and the parties realized that Defendant's motion for new trial had mistakenly been placed in the back of the court file and not file stamped. Defense counsel said he thought the motion was filed in open court at the original sentencing hearing on February 25, 2004. The State agreed, and the trial court certified that Defendant's motion for new trial was filed as of February 25, 2004. The hearing proceeded with Defendant putting on evidence that he had a mental defect that was not discoverable prior to trial. The trial court then issued a letter on April 20, 2005, stating that it was granting Defendant's motion for new trial. The final order was issued May 25, 2005.

{8} The State appealed on two grounds. First, it argued that the trial court had no jurisdiction to grant Defendant's motion for new trial fourteen months after it was filed. The State argued in the alternative that the trial court abused its discretion in granting the new trial because Defendant had not met his burden in presenting newly-discovered evidence. The Court of Appeals, in a published opinion, held for Defendant on both grounds. *State v. Moreland*, 2007–NMCA–047, ¶ 1, 141 N.M. 549, 157 P.3d 728. For the reasons outlined below, we affirm.

## II. DISCUSSION

### A. Standard of Review

{9} "Because the trial judge has observed the demeanor of the witnesses and

has heard all the evidence, ... the function of passing on motions for new trial belongs naturally and peculiarly to the trial court." *State v. Smith,* 104 N.M. 329, 333, 721 P.2d 397, 401 (1986), *overruled on other grounds by Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 779 P.2d 99 (1989). "[W]e will not disturb a trial court's exercise of discretion in denying or granting a motion for a new trial unless there is a manifest abuse of discretion." *State v. Garcia,* 2005–NMSC–038, ¶ 7, 138 N.M. 659, 125 P.3d 638. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo,* 1999–NMSC–001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (quoted authority omitted). "When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion." *State v. Flores,* 2005–NMCA–135, ¶ 35, 138 N.M. 636, 124 P.3d 1175 (quoted authority omitted).

## B. The Trial Court Did Not Abuse Its Discretion When It Granted Defendant's Motion for New Trial Fourteen Months After It Was Filed

{10} Rule 5–614(C) governs the time limits for motions for new trial in criminal cases. *See* Rule 5–614(C) NMRA. It states, in pertinent part, "[i]f a motion for new trial is not granted within thirty (30) days from the date it is filed, the motion is automatically denied." *Id.* The parties agree that Defendant's motion for new trial was filed on February 25, 2004, and was granted on April 20, 2005. It is thus undisputed that fourteen months elapsed from the time the motion was filed until it was granted.

{11} The State originally argued that Rule 5–614's time limit was jurisdictional. Analogizing to Rule 5–614's civil counterpart, Rule 1–059, as interpreted by *Martinez v. Friede,* the State argued before the Court of Appeals that the trial court lost jurisdiction after thirty days and that the motion was automatically denied if not ruled upon within that time. *See* Rule 1–059(D) NMRA (prior to 2006 amendment); *Martinez v. Friede,* 2004–

NMSC–006, ¶¶ 11–13, 135 N.M. 171, 86 P.3d 596; *Moreland,* 2007–NMCA–047, ¶ 11, 141 N.M. 549, 157 P.3d 728. However, since the time that briefing was completed in the Court of Appeals, the automatic denial provision of Rule 1–059(D) has been eliminated. *See* Rule 1–059(D) (committee comment). Further, the 2006 amendment to Rule 1–054.1, providing that civil courts have sixty days to enter a judgment or order after submission, superseded that portion of Section 39–1–1 which stated that many postjudgment motions were automatically denied if not granted within thirty days of filing. *See* NMSA 1978, § 39–1–1 (1897, as amended through 1953); Rule 1–054.1 NMRA. The State concedes that *Martinez* has been abrogated and withdraws its argument that the trial court lost jurisdiction after thirty days by virtue of Rule 5–614's time limit. *See Martinez,* 2004–NMSC–006, ¶¶ 11–13, 135 N.M. 171, 86 P.3d 596.

{12} The State now argues that the trial court abused its discretion by failing to act within a reasonable time after Defendant's motion for new trial was filed. In this effort, the State correctly points out that there is a "public interest in prompt justice." 3B Charles Alan Wright, Nancy J. King & Susan R. Klein, Federal Practice and Procedure § 831 (3d ed.2004); *see also State v. Salazar,* 2007–NMSC–004, ¶ 15, 141 N.M. 148, 152 P.3d 135 (citing the "public's interest in the efficient administration of justice without unnecessary delay" as a factor to be weighed in considering a motion for continuance). We agree with the State that this Court has a policy of expeditious resolution of post-trial motions. *See, e.g.,* Rule 1–059(B) (mandating a ten-day limit for service of post-judgment motions for new trial); Rule 12–404(A) NMRA (providing that motions for rehearing must be filed within fifteen days after disposition absent an order otherwise); *Hayes v. State,* 106 N.M. 806, 808, 751 P.2d 186, 188 (1988) (declaring that ninety days is a reasonable time for a court to decide a motion for modification of sentence). We further agree that courts are required to rule on motions for new trial within a reasonable time. However, given the unusual facts of this case, the fourteen-month delay between the time Defendant filed his motion for new

trial and the time that it was granted was not unreasonable.

{13} A review of the pertinent dates reveals no unreasonable delay. At the sentencing hearing on February 25, 2004, defense counsel informed the court that he was filing a motion for new trial based on the evaluations of the state psychologist and Dr. Roll. Since defense counsel had not yet received the report of Dr. Roll (who was in turn awaiting data from the State), he moved for a continuance of the sentencing hearing. The trial court, wanting to consider Dr. Roll's report, granted the continuance and ordered defense counsel to have the hearing reset upon receipt of Dr. Roll's report. Dr. Roll issued a report dated June 18, 2004. On September 7, 2004, the trial court set the motion for new trial to be heard. The court heard the motion on January 20, 2005. On April 20, 2005, the trial court issued a letter stating that it would grant the motion. The final order was issued on May 25, 2005.

{14} Although fourteen months might be an unreasonable delay in another case, we are faced with unusual circumstances here. The particular circumstances of this case are akin to a series of small delays, each necessary to serve the interests of justice. We note that although fourteen months elapsed between the certified date of filing and the ruling on the motion, only ninety days passed between the time the motion was heard and the trial court's letter granting it. Given the complex matter before the trial court, we conclude that ninety days was not an unreasonable length of time to decide the motion. Although we emphasize that a reasonableness standard does not serve to abolish time limits altogether, we conclude that, in the unusual circumstances of the instant case, the trial court did not abuse its discretion in granting the motion for new trial fourteen months after it was filed.

**C. The Trial Court Did Not Abuse Its Discretion When It Granted Defendant's Motion for New Trial Based on Newly–Discovered Evidence**

{15} Defendant's motion for new trial is premised on the alleged newly-discovered evidence, gleaned from the post-trial reports of the state psychologist and Dr. Roll, that Defendant has a mental condition which causes him to have a diminished capacity to reason on a day-to-day basis and which is greatly exacerbated by methamphetamine. Dr. Roll believes that Defendant has serious deficits of internal processes, including peculiar thoughts, bad reasoning, poor planning, and lack of impulse control. It is Dr. Roll's opinion that Defendant perpetually has diminished mental capacity and that his use of methamphetamines creates severe diminished capacity where he cannot be expected to think, reason, perceive, or assess reality correctly. Dr. Roll testified that Defendant has a "coping deficit index" by which he is "characteristically incapable ... of dealing with new stimulation and ... overstimulation.... [He has a] capacity to be overwhelmed."

{16} There was no evidence presented at trial of Defendant's alleged mental deficiency. However, Defendant correctly maintains that, had he presented this evidence during trial, he would have been entitled to a jury instruction for diminished capacity for the charges requiring specific intent. *See* UJI 14–5111 NMRA; *State v. Balderama*, 2004–NMSC–008, ¶ 38, 135 N.M. 329, 88 P.3d 845 ("[T]he diminished capacity instruction is proper only when there is evidence that reasonably tends to show that the defendant's claimed mental disease or disorder rendered the defendant incapable of forming specific intent at the time of the offense.").

{17} A motion for new trial in New Mexico on the basis of newly-discovered evidence is governed by the rule established in territorial days and enunciated more recently in *State v. Volpato* ("the Volpato factors"). *State v. Volpato*, 102 N.M. 383, 384–85, 696 P.2d 471, 472–73 (1985); *see also Territory v. Claypool*, 11 N.M. 568, 585, 71 P. 463, 468 (1903) (establishing the rule). A new trial is warranted if

the newly-discovered evidence is such that ... (1) it will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of due diligence; (4) it must be material; (5) it must not be mere-

ly cumulative; and (6) it must not be merely impeaching or contradictory.

*Volpato,* 102 N.M. at 384–85, 696 P.2d at 472–73.

{18} The State contends that Defendant's motion fails to meet the second and third *Volpato* factors because the evidence of Defendant's mental capacity was discovered before trial and was in fact discoverable before trial by the exercise of due diligence. The State's position is that diagnostic testing of Defendant could have been done before trial and that there were sufficient indications which would have put defense counsel on notice that inquiry into Defendant's mental condition was warranted, namely Defendant's violent and bizarre behavior, including that underlying the charges.

{19} The trial court, having "observed the demeanor of the witnesses and heard all the evidence," found that evidence of Defendant's mental deficits was discovered since the time of trial and was not discoverable prior to trial with due diligence. *See Smith,* 104 N.M. at 333, 721 P.2d at 401. There is evidence to support those findings. As to the evidence being discovered since trial, the evidence was in fact discovered only because the trial court ordered a diagnostic evaluation of Defendant *after* trial, the results of which led Defendant to undergo further diagnostic testing by Dr. Roll.

{20} Regarding the related question of whether the evidence was discoverable before trial by due diligence, there is evidence to support the trial court's finding in the negative. Dr. Roll testified that Defendant's mental deficits typically have no outward manifestation. Rather, the doctor reported, it is only when Defendant is overstimulated by methamphetamines that his faulty inner processes become evident in bad behavior. Further, Dr. Roll testified that Defendant's defects were unknowable to lay people and that even trained professionals would be unable to diagnose Defendant without the help of formal psychological tests, "just like a doctor might look at [a patient] and not know that [the patient has] pneumonia without doing some tests."

{21} Dr. Roll's characterization of the covert nature of Defendant's defects is supported by the state psychologist's report and testimony from the hearing on the motion for new trial. According to Dr. Roll's interpretation, the state psychologist's report betrayed knowledge that "something ... didn't fit" or "something [was] fishy" vis-à-vis Defendant's mental capacities, but that there was difficulty in pinpointing it. Sargent Dees, a guard at the facility where Defendant has been held for two years, testified that Defendant is a model prisoner who has never given Dees reason to think that he may have a mental defect. In light of the foregoing, we conclude that the trial court's finding that Defendant's condition was not discoverable prior to trial with the exercise of due diligence was not "against the logic and effect of the facts and circumstances of the case." *Rojo,* 1999–NMSC–001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (quoted authority omitted).

### III. CONCLUSION

{22} For the above reasons, under the highly unusual circumstances of this case, we defer to the trial court's grant of Defendant's motion for new trial. The trial court was in the best position to decide on the motion for new trial. Having found no abuse of discretion, we affirm.

{23} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PETRA JIMENEZ MAES, RICHARD C. BOSSON, Justice, and RICHARD E. RANSOM, J. Pro Tem.