**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: _____**June 28, 2017**_____

**NO. 34,090**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**VICTOR GONZALES,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Judge**

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Vicki W. Zelle, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**OPINION**

**FRENCH, Judge.**

{1} Defendant Victor Gonzales was convicted of criminal sexual contact, a misdemeanor, contrary to NMSA 1978, Section 30-9-12 (1993), in the Bernalillo County Metropolitan Court. He appealed to the Second Judicial District Court, which affirmed his conviction after reviewing his case on-record. Defendant now appeals to this Court, arguing (1) the district court erred in affirming the metropolitan court's denial of defense counsel's motion for continuance, and (2) he was entitled to a de novo appeal, not an on-record review, in the district court. We address the issue concerning de novo appeals from the metropolitan court first because it is dispositive of the continuance issue if answered affirmatively. We conclude Defendant was not entitled to a de novo appeal and that the metropolitan court did not abuse its discretion by denying defense counsel's motion for continuance.

**BACKGROUND**

{2} Around 2:30 a.m. on September 24, 2011, a woman (Victim) called the police to report that a man attacked her in the parking lot of the apartment complex where she resided. Victim reported that the man approached her while she was getting laundry from the trunk of her car. Victim said the man grabbed her, exposed her buttocks by pulling her shorts down, and briefly squeezed them. Victim allegedly

screamed for help, and the man "eventually" began walking away from her, pushing a red dolly that carried a white garbage bin.

{3} Five days after the incident, a detective presented Victim with a photo array. She was unable to identify her assailant in the array. She told the detective that it was dark, her assailant was wearing a baseball cap, and his face was shadowed. The next day, six days after the incident, Victim believed a man she saw standing on a street corner, Defendant, was her assailant. Victim and her husband followed Defendant in their car, and Victim's husband got out of the car to confront Defendant. Defendant called 911 for assistance. On October 6, six days after Victim and her husband confronted Defendant, a detective presented Victim with a second photo array that included a photograph of Defendant, and she identified Defendant as her assailant.

{4} Defendant's case was first scheduled for trial in metropolitan court on June 5, 2012. Victim failed to appear at trial on this date. The State could not proceed with the trial without Victim present and requested the trial date be reset. The metropolitan court reset the trial for July 23, 2012, yet victim again failed to appear. The State contacted Victim, who said she could be present within one hour. Defense counsel interjected, stating that it was not necessary for Victim to come that day and stipulated to a continuance. Defense counsel also noted that she had not yet

2

interviewed Victim due to scheduling problems. The metropolitan court reset trial for September 5, 2012.

{5}      At trial on September 5, defense counsel requested a continuance. Defense counsel argued that the State failed to account for evidence relevant to the investigation of the State's initial suspect, who was not Defendant—namely, a lapel video recording from a camera worn by an investigating officer that was only twenty seconds long, and an incident number logged by an investigating officer that did not have an accompanying police report. Defense counsel also repeatedly argued she needed time to subpoena each officer on the State's witness list. Ultimately, the metropolitan court denied the motion for continuance.

{6}      The jury convicted Defendant of criminal sexual contact. Defendant appealed to the district court, which reviewed his case on-record and affirmed the conviction.

**DISCUSSION**

**Appeal in the District Court**

{7}      Initially, this appeal requires us to clarify the analysis to be employed by a district court acting in its appellate capacity when reviewing a conviction from the metropolitan court that potentially arises from domestic abuse under the Family Violence Protection Act (FVPA), NMSA 1978, §§ 40-13-1 through 40-13-12 (1987, as amended through 2016). Generally, the district court reviews appeals from the

metropolitan court de novo, but cases involving domestic violence are heard on-record. *See* NMSA 1978, § 34-8A-6 (C), (D) (1993). First, we conclude that a judgment and sentence convicting a defendant of criminal sexual contact, regardless of whether the victim and the defendant are household members, is a criminal action involving domestic abuse as defined in the FVPA. Second, determining the procedure for Defendant's appeal in the district court requires us to interpret Section 34-8A-6, and this leads us to conclude that Defendant was entitled to an on-record appeal.

{8}     "The proper procedure to be followed by a district court when reviewing a [m]etropolitan [c]ourt's conviction is a question of statutory interpretation which we review de novo." *State v. Wilson*, 2006-NMSC-037, ¶ 6, 140 N.M. 218, 141 P.3d 1272; *see State v. Krause*, 1998-NMCA-013, ¶ 3, 124 N.M. 415, 951 P.2d 1076 (describing the issue of whether a defendant was entitled to a de novo appeal in district court as a legal question, which is reviewed de novo).

{9}     The New Mexico Constitution vests district courts with "appellate jurisdiction of all cases originating in inferior courts." N.M. Const. art. VI, § 13. These trials "shall be had de novo unless otherwise provided by law." N.M. Const. art. VI, § 27. Article 8A of Chapter 34 provides such an exception. Section 34-8A-6 sets forth the criminal actions for which the metropolitan court is a court of record, as well as those criminal actions for which the metropolitan court is not.

4

{10} Subsection (C) states, "The metropolitan court is a court of record for criminal actions involving . . . domestic violence. A criminal action involving domestic violence means an assault or battery . . . in which the alleged victim is a household member as defined in the [FVPA]." Section 34-8A-6(C). The FVPA defines a "household member" as "a spouse, former spouse, parent, present or former stepparent, present or former parent-in-law, grandparent, grandparent-in-law, child, stepchild, grandchild, co-parent of a child or a person with whom the petitioner has had a continuing personal relationship." Section 40-13-2(E). A "continuing personal relationship" means "a dating or intimate relationship[.]" Section 40-13-2(A). Section 34-8A-6(D) states, "The metropolitan court is not a court of record for criminal actions other than . . . domestic violence actions." Appeals of these criminal actions shall be reviewed de novo. *Id.*

{11} In short, when construed alongside one another, Section 34-8A-6(C) and Section 40-13-2(E) of the FVPA combine to provide that a defendant receives an on-record review on appeal only when the conviction involves domestic violence and the victim and the defendant are related by blood or by marriage, or have been in an intimate relationship. The defendant receives an appeal de novo if the conviction is anything other than such instances of domestic violence or driving while under the influence. *See* § 34-8A-6(D).

5

{12} Here, Victim and Defendant are strangers. Victim purportedly had only two encounters with Defendant: the night of the incident and six days after the incident. She had not met Defendant before the night of the incident. Her only way of identifying Defendant was by the item that he carried when the incident occurred. Furthermore, the record shows Victim is in an intimate relationship with someone else, her husband. Victim and Defendant in this case are not related by blood or by marriage, nor is there any indication they were in an intimate relationship with one another. These facts preclude application of Section 34-8A-6(C), as they are afield of the circumstances for which on-record review is provided by the FVPA's definition of household member. *See* § 40-13-2(A) and (E).

{13} Next, we look to Section 34-8A-6(D), which encompasses de novo review for non-excepted convictions in metropolitan court. Subsection (D) encompasses criminal actions other than domestic violence or driving under the influence. We do not read Subsection (D) as a catch-all provision, such that all criminal actions not described by Subsection (C) must therefore be categorized as Subsection (D) criminal actions. That is not how Subsection (D) is written. Subsection (D) does not, for example, state: "The metropolitan court is a court of record for all other criminal actions not described by Subsection (C)." Furthermore, the Legislature specifically employed the term "household member" in Subsection (C) and omitted the term in

Subsection (D). Accordingly, the question becomes: is criminal sexual contact against a non-household member a criminal action other than domestic violence? If so, Subsection (D) applies, and Defendant was entitled to a de novo appeal.

{14} Because the facts of this case lack any element of domesticity, it would seem the conviction is a criminal action other than domestic violence. However, two developments complicate the application of Section 34-8A-6. First, our Supreme Court's holding in *State ex rel. Schwartz v. Sanchez* incorporates into Section 34-8A-6 the definition of "domestic abuse" as it appears in the FVPA. 1997-NMSC-021, ¶ 7, 123 N.M. 165, 936 P.2d 334. The Court held that the term "domestic violence" in Section 34-8A-6 "must be read in pari materia" with the definition of "domestic abuse" in the FVPA. *Schwartz*, 1997-NMSC-021, ¶ 7; *see also Wilson*, 2006-NMSC-037, ¶ 1 n.1 ("Although the language in these two statutes is not identical, the same definition is employed to identify both domestic violence and domestic abuse."). Without *Schwartz*, Section 34-8A-6 only references the definition of "household member" in the FVPA, not the definition of "domestic abuse."

{15} Second, the Legislature has amended the definition of "domestic abuse" in the FVPA since the Supreme Court decided *Schwartz*. *See* § 40-13-2(D); 2008 N.M. Laws, ch. 40, § 2. Currently, under the FVPA, "domestic abuse" means: (1) "an incident of stalking or sexual assault whether committed by a household member or

not"; and (2) "an incident by a household member against another household member" consisting of or resulting in physical harm, severe emotional distress, bodily injury or assault, etc. Section 40-13-2(D). Generally, the FVPA applies to conduct that occurs between household members, but it also applies to some criminal actions that have no element of domesticity. Its protections, thus, directly extend to victims of sexual assault. The victim and the accused could be complete strangers; so long as the conduct at issue is sexual assault, the FVPA applies nonetheless.

{16} The FVPA, however, does not define the term "sexual assault." We must therefore determine whether Defendant's conviction, criminal sexual contact, is sexual assault. If criminal sexual contact is a sexual assault, then Defendant's conviction is "domestic abuse" as defined by the FVPA. Such a conclusion would then render the de novo provision of Section 34-8A-6 inapplicable by its own terms, because Subsection (D) only applies, in pertinent part, to criminal actions other than domestic abuse.

{17} Defendant acknowledges that the Legislature has amended the FVPA to include within the definition of "domestic abuse" an incident of sexual assault "whether committed by a household member or not," but he maintains that criminal sexual contact is not sexual assault. Rather, he contends sexual assault refers only to criminal sexual penetration. Defendant cites to the Sexual Assault Survivors

8

Emergency Care Act (SASECA) that defines "sexual assault" as criminal sexual penetration, excluding criminal sexual contact.

{18}    Contending that the SASECA is inapplicable here, the State argues that criminal sexual contact is sexual assault, and therefore, this is a criminal action involving domestic abuse. If correct, and in light of *Schwartz*, Defendant's conviction would be excluded from those metropolitan court convictions for which Section 34-8A-6(D) provides a right to a de novo appeal. We agree with the State that the SASECA is designed for a purpose unrelated to the categorization of sexual assault offenses. In fact, the purpose of the SASECA is to provide emergency services, including contraceptive services, to victims of sexual assault. To that end, it defines sexual assault as criminal sexual penetration. So, in the context of the SASECA, it is sensible that sexual contact and penetration are treated differently insofar as each present different dangers to recent victims. But we fail to see how such unrelated classification of sexual assault is relevant for purposes of the FVPA, and agree with the State's general argument that the ordinary meaning of "sexual assault" is an "offensive sexual contact with another person," as defined by *Black's Law Dictionary* and the federal Violence Against Women Act.

{19}    We hold that criminal sexual contact against a non-household member is sexual assault as the term is used in the FVPA. "In interpreting a statute, [the] primary

9

objective is to give effect to the Legislature's intent." *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125. To discern legislative intent, appellate courts look first to the language used in the statute and the plain meaning of that language. *See id.*; *see also High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 ("The first rule is that the plain language of a statute is the primary indicator of legislative intent." (internal quotation marks and citation omitted)). Courts must "give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent." *State ex rel. Klineline v. Blackhurst*, 1988-NMSC-015, ¶ 12, 106 N.M. 732, 749 P.2d 1111 (1988)). Courts "will not read into a statute or ordinance language which is not there, particularly if it makes sense as written." *Burroughs v. Bd. of Cty. Comm'rs*, 1975-NMSC-051, ¶ 14, 88 N.M. 303, 540 P.2d 233. If the statute contains clear and unambiguous language, courts "will heed that language and refrain from further statutory interpretation." *Trujillo*, 2009-NMSC-012, ¶ 11. "The plain meaning rule requires that statutes be given effect as written without room for construction unless the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, in which case the statute is to be construed according to its obvious spirit or reason." *State v. Boyse*, 2013-NMSC-024, ¶ 9, 303 P.3d 830 (internal quotation marks and citation omitted).

{20}    We first consider the language of the statute. The FVPA states that "domestic abuse" means "an incident of stalking or sexual assault whether committed by a household member or not[.]" Section 40-13-2(D)(1). The statute does not list specific crimes that constitute sexual assault. If, as Defendant contends, the Legislature intended only that victims of criminal sexual penetration receive the protections of the FVPA, it could have stated that explicitly in the statute. For example, the Legislature could have amended the FVPA to read as follows: domestic abuse means an incident of stalking or *criminal sexual penetration* whether committed by a household member or not. Given the option to write the statute this way and the fact that the statute is not written to reference only criminal sexual penetration, it stands to reason that the Legislature intended "domestic abuse" to refer to a broader category of sexual offenses.

{21}    Second, we note that "our courts interpret the intended meaning of statutory language by consulting the dictionary to ascertain the words' ordinary meaning." *Boyse*, 2013-NMSC-024, ¶ 9. The entry for "sexual assault" in *Black's Law Dictionary* provides two definitions. First, "sexual assault" means "[s]exual intercourse with another person who does not consent[,]" noting "[s]everal state statutes have abolished the crime of rape and replaced it with the offense of sexual

11

assault." *Black's Law Dictionary* 138 (10th ed. 2014). Second, "sexual assault" means "[o]ffensive sexual contact with another person, exclusive of rape." *Id.*

{22} The first entry in the dictionary narrowly defines sexual assault as intercourse because, as noted, many states used the offense of sexual assault to replace conduct formerly defined as rape. In New Mexico, the crime of rape was not replaced with the offense of sexual assault. *State v. Keyonnie*, 1977-NMSC-097, ¶ 5, 91 N.M. 146, 571 P.2d 413 (explaining that "[t]he essential elements of the common law crime of rape, from which the statutory offense of criminal sexual penetration was derived," were carnal knowledge or intercourse). Rather, the crime of rape was replaced with the offense of criminal sexual penetration. *State v. Williams*, 1986-NMCA-122, ¶ 14, 105 N.M. 214, 730 P.2d 1196 (explaining that "[t]he statutory crime of rape was repealed in 1975" and Chapter 30 was amended to substitute "criminal sexual penetration" for "rape" (citing 1975 N.M. Laws, ch. 109, § 8)). Thus, in New Mexico, "sexual assault" is not the term used for rape or intercourse without consent. Rather, "criminal sexual penetration" is the offense that replaced the crime of rape. Therefore, the first entry for "sexual assault" in *Black's Law Dictionary* is not an accurate description of how New Mexico has used the term in its statutes, and the second entry—"offensive sexual contact with another person, exclusive of rape"—comports with the way the term is used in this state. *See Black's Law Dictionary* at 138. Accordingly, we

conclude the term "sexual assault" as used in the FVPA means offensive sexual contact with another person, and therefore includes Defendant's conviction of criminal sexual contact. Defendant's conviction is, thus, an act of domestic abuse as defined by the FVPA, and Section 34-8A-6(D), providing for de novo appeals in the district court, is inapplicable.

{23} At this point in our analysis, we have concluded that the facts of the case fit into neither Section 34-8A-6(C) (because it requires the victim to be a household member) nor Section 34-8A-6(D) (because it only applies to criminal actions other than domestic abuse, and criminal sexual contact is domestic abuse as currently defined by the FVPA). This seemingly conflicting result is not surprising given the number of amendments made to the FVPA and the fact that no amendments have been made to Section 34-8A-6. The 2010 amendment to the FVPA and Section 32-8A-6 are thus functionally at odds. We must, therefore, next look to the object and purpose behind the statutes in order to determine whether Defendant's conviction is the sort of criminal action that receives an on-record or de novo review on appeal according to Section 34-8A-6.

{24} The State argues that *Schwartz* is controlling. It characterizes the holding broadly, stating that "our Supreme Court held that all acts of domestic abuse as defined in the [FVPA] are tried on-the-record in [m]etropolitan [c]ourt and only

entitled to an on-record review." The purpose and intent behind the FVPA is to give victims of domestic abuse special protections because they are especially vulnerable. The Legislature has expanded that class of victims to include non-household members by amending the definition of "domestic abuse" in the FVPA. *Compare* § 40-13-2(D)(1), *with* § 40-13-2(C) (1995). Indeed, *Schwartz* directs this Court to read Section 34-8A-6 "in pari materia" with the FVPA. *Schwartz*, 1997-NMSC-021, ¶ 7. Section 34-8A-6(D) in effect means that domestic abuse actions do not receive de novo appeals, and because domestic abuse now includes criminal actions between non-household members, those defendants are only entitled to an on-record review under *Schwartz*. The State notes that the Legislature has been in session nineteen times since the Supreme Court decided *Schwartz*, and it has made no amendments to Section 34-8A-6. According to the State, this inaction "indicates that the legislative intent articulated in *Schwartz* was correct."

{25}     Defendant argues the opposite—*Schwartz* is not controlling. He maintains the holding stems from considerations that are no longer compelling because of the way the Legislature has amended the definition of "domestic abuse." Specifically, our Supreme Court recognized that victims of domestic abuse are especially vulnerable "[*b*]*ecause of the close relationship between the victim and the accused*" and "*because this form of violence is often repeated*[.]" *Schwartz*, 1997-NMSC-021, ¶ 9

14

(emphasis added). Defendant argues that the rationale and the holding in *Schwartz* depend on the fact that the victim and the accused are in a close or continuing relationship. According to Defendant, only "those charged with sexual assault that have or have had a continuing relationship with their victim are justified in being included in the scope of criminal actions of 'domestic violence' for the purposes of 'on-record appeal' cases versus 'de novo appeals.' "

{26} We agree with Defendant that *Schwartz* answers a different question, but we hold that the tools of statutory interpretation compel the conclusion that Defendant was only entitled to an on-record review on appeal.

{27} This case is distinguishable from *Schwartz* for two reasons. First, our Supreme Court decided *Schwartz* before the definition of "domestic abuse" in the FVPA included conduct that occurs between completely unrelated people. In 1993 the Legislature amended the FVPA to expand the definition of "domestic abuse" to include more than just assault and battery, *see* § 40-13-2(C) (1993) (current version at Section 40-13-2(D)), the same offenses that are specifically listed in Section 34-8A-6(C). *See Schwartz*, 1997-NMSC-021, ¶ 6. *Schwartz* was decided in 1997, when the FVPA defined "domestic abuse" as " 'any incident by a household member against another household member' " resulting in physical harm, severe emotional distress, bodily injury, etc. *Id.* ¶ 5 (quoting Section 40-13-2(C) (1995)). Our Supreme

15

Court had to determine whether all of the conduct described in the FVPA came under the purview of Section 40-13-2(C) (1993) even though Subsection (C) only lists assault and battery. *Id.* ¶ 6 (noting that the question is "whether all of the acts of domestic abuse included in the [FVPA after the 1993 amendment] should be tried on-record"). The 1993 amendment at issue in *Schwartz* expanded the offenses considered to be domestic abuse under the FVPA; it did not change anything about the requisite relationship between the victim and the accused. *Compare* § 40-13-2(C) (1993), *with* § 40-13-2(D)(1). After the 1993 amendment, the FVPA still required that the conduct occur between household members in order to be considered domestic abuse. Here, the issue is a later amendment that expanded the class of people to whom the FVPA applies, not the nature of the conduct to which it applies. *See* § 40-13-2(D)(1) (including the phrase "whether committed by a household member or not" in the definition of "domestic abuse").

{28}     Second, this case is factually different from *Schwartz*. In *Schwartz*, it can be presumed that the victim and the accused were household members. *See* 1997-NMSC-021, ¶ 9. Here, Victim and Defendant are strangers. The distinction is legally relevant because it proves that, at the time *Schwartz* was written, our Supreme Court did not contemplate a scenario like the one presented by the facts of this case, where no relationship exists between the victim and the accused.

16

{29} For the foregoing reasons, *Schwartz* is not controlling. Nevertheless, the logic and spirit of *Schwartz* is instructive. It directs that we read Section 34-8A-6 "in pari materia" with the FVPA. *Schwartz*, 1997-NMSC-021, ¶ 7. We must construe the two statutes "in a way that facilitates their operation and the achievement of their goals[,]" according to the Legislature's intent and policy. *Id.* (internal quotation marks and citation omitted). *Wilson* reiterates this point: "We have previously recognized that Section 34-8A-6(C) 'must be read in pari materia with the definition of domestic abuse in the [FVPA].' " *Wilson*, 2006-NMSC-037, ¶ 8 (internal quotation marks and citation omitted). Similarly, in *Wilson*—also decided when the FVPA only applied to crimes occurring between household members—our Supreme Court stated:

> we believe that the Legislature recognized that violence in the context of genuinely long-term relationships was particularly serious, and that victims of violence in this context were in need of greater protection than victims of other crimes. The FVPA is intended to address the unique needs of this group of victims.

*Id*. ¶ 15 (citation omitted).

{30} *Schwartz* and *Wilson* make it clear that the policy behind the FVPA is to extend certain protections to a victim of domestic abuse because the relationship between the victim and the accused makes the victim especially vulnerable. Given the more recent amendment to the definition of "domestic abuse" to include non-household member victims, we conclude the Legislature's intent behind the FVPA has shifted since

*Schwartz* and *Wilson*. By defining "domestic abuse" in the FVPA to include criminal conduct of a sexually assaultive nature by non-household members, the Legislature opted to expand the class of victims entitled to the special protections of the FVPA. The language is clear: the meaning of "domestic abuse" is "an incident of stalking or sexual assault whether committed by a household member *or not*." Section 40-13-2(D)(1) (emphasis added). Accordingly, the Legislature must have intended for these victims to receive the same protections as the victims previously covered by the FVPA before the 2008 amendment. Aligned with the Legislature's evolved perspective and the rationale which underpinned *Schwartz* and *Wilson*, we hold that the victims of criminal sexual contact, regardless of their relationship with the accused, also receive the same protections under Section 34-8A-6, that is, the accused receives an on-record review on appeal in the district court, which ensures the victim is not required to testify twice. *See Schwartz*, 1997-NMSC-021, ¶¶ 7, 9.

{31} The provisions of the FVPA provide further support for this conclusion. Generally, the FVPA allows a victim to obtain a protective order, and limits the victim's exposure to the defendant. For example, Section 40-13-11 authorizes the victim to use the Secretary of State as a substitute address and requires the Secretary of State to maintain a confidential record of applications for substitute address. Our holding, that a person convicted of criminal sexual contact in the metropolitan court

receives on-record review on appeal in the district court, ensures that the victims of sexual assault, regardless of their relationship with the accused, receive the same protections as the victims previously covered by the FVPA, whom the Legislature considers especially vulnerable, and who are therefore not required to testify more than once. This is consistent with and furthers the purposes of the FVPA because, like Section 40-13-11, it limits the victim's exposure to the defendant. We hold that a person convicted of criminal sexual contact against a non-household member receives an on-record review on appeal in the district court, following our Supreme Court's declaration that " 'all domestic abuse actions, as defined in the [FVPA], should be tried on-record.' " *Wilson*, 2006-NMSC-037, ¶ 8 (quoting *Schwartz*, 1997-NMSC-021, ¶ 7).

**Motion for Continuance**

{32}    Defendant contends that the metropolitan court abused its discretion by denying trial counsel's motion for continuance. We review the denial of a motion for continuance for an abuse of discretion. *See State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135. An abuse of discretion is a ruling that is "clearly against the logic and effect of the facts and circumstances of the case." *State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363 (internal quotation marks and citation omitted). A court abuses its discretion when "the denial of the motion for

continuance does not follow from a logical application of these factors" to the facts and circumstances of the case. *State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20. The defendant carries the burden of establishing an abuse of discretion, and that the abuse was to the injury of the defendant. *See Salazar*, 2007-NMSC-004, ¶ 10.

{33}     When reviewing the denial of a motion for continuance, courts consider several factors:

> (1) the length of the requested delay; (2) the likelihood that a delay would accomplish the movant's objectives; (3) the existence of previous continuances in the same matter; (4) the degree of inconvenience to the parties and the court; (5) the legitimacy of the motives in requesting the delay; (6) the fault of the movant in causing a need for the delay; and (7) the prejudice to the movant in denying the motion.

*Torres*, 1999-NMSC-010, ¶ 10.

{34}     Considering these factors in light of the facts of this case, we conclude the metropolitan court did not abuse its discretion by denying defense counsel's motion for continuance. First, Defense counsel requested an additional two or three weeks. This is not an unreasonable length of time, especially when paired with the fact that one of the previous continuances added sixty days, more than twice the length of defense counsel's request. However, the trial had already been continued two times. By the date of the requested continuance, defense counsel had received an additional

three months to prepare for trial. As such, the first factor weighs against granting the motion.

{35} The second factor also weighs against granting the motion. When asked why further continuance was needed, defense counsel stated "so that I can satisfy myself that I have all the information." In this instance, however, defense counsel's objective, that is, making sure she had all of the information she needed, could not possibly have been accomplished by resetting the trial for a later date because the metropolitan court specifically addressed each piece of information defense counsel was concerned about. Specifically, the State personally spoke with the officer who wore the lapel video with the brief recording, who said she had no explanation for why the video was cut short aside from battery failure and that the State possessed the exact same recording as Defendant. The State also communicated with the investigating officer who purportedly prepared the police report that Defendant never received, and that officer stated that no such report had been prepared. That evidence, which formed the basis of defense counsel's need for the continuance, was thus accounted for before the metropolitan court ruled on the motion.

{36} The third and fourth factors generally weigh against granting the motion for continuance. As noted, two previous continuances had already delayed trial three months beyond the initial trial setting. While we note that the parties dispute to whom

21

the second continuance should be attributed, we also note that although Victim was not present at the start of the July setting, the State specifically said Victim could be there in one hour. The State did not move for a continuance. Defense counsel interjected before the court could comment, seeking to "stipulate" to a continuance because counsel had not yet interviewed Victim. The district court responded: "I really want the defense to interview the victim before we start the jury trial, so it's going to be reset." The second continuance was, therefore, granted for the benefit of Defendant. As well, we presume resetting the trial date on the day trial is supposed to begin is inconvenient for the parties and for the court. *See State v. Aragon*, 1997-NMCA-087, ¶ 22, 123 N.M. 803, 945 P.2d 1021 ("[A]s a general rule, a motion for continuance filed at the last minute is not favored."). We also note that any additional delay caused by granting defense counsel's requested continuance on the day of the trial would have inconvenienced and prejudiced the State, given that Victim was present to testify at trial.

{37} The fifth factor also weighs against granting the motion. The discussions that occurred prior to the September trial setting cast doubt on the purpose of defense counsel's request. The lapel video in question, for example, was discussed at the June trial setting in addition to the discussion in September. During the June discussion, the State explained that the recording in its possession was also cut short, and that it

would address the officer who wore the camera to confirm the correct length of the recording. Moreover, the metropolitan court judge actually reviewed the recording personally, confirming that defense counsel had in its possession the same recording as the State. The lapel video issue had been raised by defense counsel and resolved by the State and the metropolitan court months before trial. To raise this issue as a basis for continuing trial a third time lacks merit. Defense counsel also argued that officers on the State's witness list were not present to testify, and stated the defense would "possibly" call them as witnesses. First, we note that the State is not required to call as witnesses every person on its witness list. The State's witness list expressly states: "If the defendant requires the presence of any of the above witnesses, the defendant should subpoena them." Second, counsel failed to assert or demonstrate that the presence of the officers would materially affect her presentation of a defense.

{38}     The parties also dispute the sixth factor, whether the movant caused the need for the delay. Defendant argues that defense counsel did not cause the need for delay. Rather, the fault lies with the use of horizontal representation employed by the metropolitan court trial division of the Office of the Public Defender. As a result, Defendant's case passed through numerous attorneys throughout the pretrial process. The metropolitan court took into consideration the fact that Defendant had a new attorney every time the case was called and that counsel present at the trial in

September may have had less than the typical amount of time to prepare, noting: "You've had time to prepare . . . not as much as others. Again, he has different attorneys . . . every time he's been in here." As acknowledged by the metropolitan court, this factor weighs in favor of granting the motion.

{39} Finally, the last factor requires the movant to show that a denial of the continuance will prejudice the movant. *See Salazar*, 2007-NMSC-004, ¶ 10 ("Defendant must establish not only an abuse of discretion, but also that the abuse was to the injury of the defendant." (internal quotation marks and citation omitted)). Defense counsel made no such showing before the metropolitan court. To reiterate, the metropolitan court resolved the issues with the lapel video and the non-existent police report. The metropolitan court also made several statements indicating the lack of prejudice to Defendant if the officers on the state's witness list were not present for trial. Defense counsel's only statement indicating the prejudicial effect of their absence was: "I believe that these witnesses have information that would be relevant to the defense." First, the metropolitan court noted that defense counsel had already interviewed all of the officers and knew what their testimony would be if they were present for trial. The court also expressly stated: "If they are [essential], I'm not going to force you to go. . . . I certainly don't want to jeopardize the rights of Mr. Gonzales. . . . If they are essential for you, I need to know." When defense counsel

did not answer the question affirmatively, the court concluded, "There is no representation they're essential or that you would even call them [as witnesses]." Given that defense counsel had already interviewed the officers and did not claim them to be essential trial witnesses, no showing of prejudice was made before the metropolitan court.

{40} On appeal, Defendant also argues the continuance was necessary to allow time for counsel to retain an eyewitness identification expert to educate the jury about the likelihood of an erroneous identification. Given that Victim's personal identification of Defendant was essential to Defendant's guilt or innocence, the absence of an eyewitness expert was detrimental to Defendant's case. But this argument was not made to the metropolitan court. Therefore, it was not preserved for review and we decline to consider it. Rule 1-073(O) NMRA (providing that in order "[t]o preserve a question for review it must appear that a ruling or decision by the metropolitan court was fairly invoked"); *State v. Telles*, 1999-NMCA-013, ¶ 15, 126 N.M. 593, 973 P.2d 845 (explaining that an issue raised on appeal is not preserved where a defendant failed to invoke a ruling by the trial court on that issue).

{41} The metropolitan court carefully considered defense counsel's motion before denying it, reviewing each one of defense counsel's arguments about the lapel video and the police report, and specifically inquiring about whether the officers on the

State's witness list were essential, which would have shown prejudice to Defendant's case. For the foregoing reasons, we cannot conclude the metropolitan court's ruling was unfair, arbitrary, or erroneous, or that the court acted beyond the bounds of its discretion by denying the motion. *State v. Brazeal*, 1990-NMCA-010, ¶ 16, 109 N.M. 752, 790 P.2d 1033 (explaining that a trial court "has broad discretion in ruling on a motion for continuance"); *State v. Gonzales*, 1991-NMSC-075, ¶ 13, 112 N.M. 544, 817 P.2d 1186 (explaining that a court abuses its discretion only if the court's ruling can be "characterized as unfair, arbitrary, or as manifest error"). We affirm the denial of Defendant's motion for continuance.

**CONCLUSION**

{42} We hold that Defendant was entitled to an on-record review on appeal in the district court and that the metropolitan court did not abuse its discretion by denying Defendant's motion for continuance. Defendant's conviction is affirmed.

{43} **IT IS SO ORDERED.**

_____
**STEPHEN G. FRENCH, Judge**

**I CONCUR:**

_____
**J. MILES HANISEE, Judge**

**JONATHAN B. SUTIN, Judge (concurring in part and dissenting in part)**

26

**SUTIN, Judge (concurring in part and dissenting in part).**

{44} I concur in the majority's continuance ruling and respectfully dissent as to its review-standard ruling.

{45} I view the review standard issue as one of policy that places at odds (1) the majority's protection of victims of misdemeanor sexual contact outside of domesticity against having to testify twice, and (2) the right of defendants who have been charged with a non-domestic-related misdemeanor to a district court trial de novo. Assuming, without deciding, that we are not confronted with a constitutional deprivation or governance by the province of courts over the Legislature, my choice is to leave the answer for the Legislature, as I now explain.

{46} The crux of my concern is how we interpret the "protection" that the Legislature intends the FVPA to afford to victims of misdemeanor sexual contact. It appears that the Section 40-13-2(D)(1) amendment intended to extend the protections of the FVPA to sexual contact victims who are not household members. But nowhere in the FVPA is there a protection in regard to the review standard in misdemeanor sexual contact cases. It is an analytic jump to conclude that the amendment was intended to provide review "protection" or that the concern about a

victim's vulnerability and apparent need for FVPA protection, as expressed in *Schultz* and *Wilson*, has to do with the review to be provided in Section 34-8A-6.

{47} Sections 34-8A-6(C) and (D) relating to metropolitan court appeals were enacted in 1993. Section 40-13-2 was first enacted before 1993, apparently in 1987, and contained the definition of "household member." *Schwartz* was decided in 1997, *Wilson* in 2006. All of these enactments and decisions occurred before Section 40-13-2(D)(1), which was enacted in 2008.

{48} Section 34-8A-6(C) and (D) or the section's earlier subsection designations referred to the definition of "household member" as defined in Section 40-13-2 before the advent of Section 40-13-2(D)(1) and its "or not" language. Section 34-8A-6(C) and (D) have not been amended to apply to non-household members. Further, statutory interpretation rules, ordinarily applied, should lead this Court to hold that the definition of "a criminal action involving domestic violence" in Section 34-8A-6(C) would apply to "domestic violence actions" in Section 34-8A-6(D), contrary to the majority opinion's treatment of those two subsections. *See Baker v. Hedstrom*, 2013-NMSC-043, ¶ 15, 309 P.3d 1047 (requiring courts to examine a statute as a whole, including the purposes and consequences of the statute); *Allen v. McClellan*, 1965-NMSC-094, ¶ 6, 75 N.M. 400, 405 P.2d 405 (requiring in statutory construction for courts to read all of the provisions of a statute together to ascertain legislative

28

intent and that "each part should be construed in connection with every other part so as to produce a harmonious whole").

{49} Thus, I question the analysis in the majority opinion that ties FVPA protection and victim vulnerability to non-household victims of misdemeanor sexual contact. The idea of not requiring a victim of domestic misdemeanor sexual contact to have to testify twice came from the unique circumstances of sexual assault in domestic relationships involving close and continuing long-term relationships. *See* § 40-13-2(A) (defining a "continuing personal relationship" referred to in Section 40-13-2(E) to mean "a dating or intimate relationship"). When neither victim nor perpetrator is a household member but are complete strangers, the foregoing rationales of protection and vulnerability in unique domestic circumstances do not apply. A non-household member assaulted by a non-household perpetrator is far afield from the Legislature's clear concern about *domestic* violence and the vulnerability of persons in domestic or long-term continuing relationships. Balancing the concerns for misdemeanor sexual contact victims outside of domestic circumstances with concerns relating to criminal justice and procedure, it would appear that the criminal justice and procedure concern of allowing the defendant a de novo trial in district court should prevail. This leaves to pure domestic circumstances the exception to the otherwise constitutionally required de novo review. *See* N.M. Const. art. VI, §§ 13, 27 (vesting district courts

29

with "appellate jurisdiction of all cases originating in inferior courts" and that such trials "shall be had de novo unless otherwise provided by law").

_____
**JONATHAN B. SUTIN, Judge**