This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38692

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JOSHUA R. GRANTHAM,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Judge**

Hector H. Balderas, Attorney General
Cole P. Wilson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mark A. Peralta-Silva, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}**     Defendant Joshua Grantham appeals his conviction for intimidation of a witness, contrary to NMSA 1978, Section 30-24-3 (1997). On appeal, Defendant argues: (1) his due process rights were violated because the State knowingly presented false testimony; (2) the district court abused its discretion in prohibiting defense counsel from asking the complaining witness a question; (3) the district court committed plain error in

admitting certain evidence; and (4) the evidence supporting Defendant's conviction is insufficient.[1] We affirm.

## BACKGROUND

**{2}**     Defendant and Brooklyn Edwards previously dated and lived together for about three years. While dating, both Defendant and Edwards were on supervised probation as a result of criminal convictions. At some point, Defendant picked up a new charge in which the magistrate imposed no contact with Edwards, who was listed as a witness in the case. Upon discovery of Defendant's new offense, Petra Wolf, Defendant's and Edwards's probation officer, ordered them to have no contact with each other. Subsequently, Edwards received a series of emails from *jgrantham088@gmail.com*, an address Edwards later testified was associated with Defendant. In the emails, Defendant wrote that he wanted Edwards to testify falsely in his pending criminal case. Defendant also threatened to turn the emails over to Wolf if Edwards refused; Defendant told Edwards that turning them over would show Edwards violated her probation and result in her going to prison. Instead, Edwards herself disclosed the emails to Wolf, and Defendant was charged with intimidation of a witness. At trial, the defense theory was that Edwards created the Gmail account and fabricated the threatening emails to have Defendant's probation revoked. We discuss additional facts as necessary within our analysis of the issues.

## DISCUSSION

### I.     Defendant's Right to Due Process Was Not Violated

**{3}**     Defendant first argues he was denied due process of law because the State failed to correct purportedly false testimony by Edwards. Edwards testified that she sent the State information connecting the Gmail address to Defendant—specifically, a screenshot showing the email address as linked to Defendant's Facebook profile. During a bench conference, defense counsel asserted Edwards was lying and asked the State to stipulate that it did not receive the screenshot. Despite acknowledging that it did not receive the screenshot, the State refused to make the stipulation, stating, "We don't know if [Edwards] sent it . . . we don't know that, we don't know that." The State, however, was willing to stipulate that it did not introduce into evidence any documents showing a link between Defendant's Facebook profile and the Gmail address—a fact Defendant stressed during closing argument.

**{4}**     Generally speaking, due process of law is denied if the state knowingly and deliberately uses false evidence in a criminal case and "such evidence is material to the guilt or innocence of the accused." *State v. Hogervorst*, 1975-NMCA-028, ¶ 6, 87 N.M. 458, 535 P.2d 1084. To establish such a due process violation, a defendant must show:

---

[1]Defendant also contends that the errors, considered together, deprived him of a fair trial. Because we find no error occurred, we do not address Defendant's cumulative error argument. *See State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211 (concluding no cumulative error could have arisen where there was no error in the actions and decisions of the district court).

"(1) that the original testimony was, in fact, false; and (2) that it was knowingly, wilfully and intentionally used by the prosecution to procure the conviction." *Case v. Hatch*, 2008-NMSC-024, ¶ 8, 144 N.M. 20, 183 P.3d 905 (internal quotation marks and citation omitted); *see also Aragon*, 1999-NMCA-060, ¶ 10 (stating that we presume correctness in the district court's rulings and that the burden is on the appellant to demonstrate trial error). We apply the same test when the state learns of false testimony at trial but fails to correct it. *Case*, 2008-NMSC-024, ¶ 8; *see also State v. Reese*, 1977-NMCA-112, ¶ 10, 91 N.M. 76, 570 P.2d 614 ("The knowing use of false evidence or the failure to correct false evidence at a trial on the merits, is a violation of due process if the evidence is material to the guilt or innocence of the accused.").

**{5}**     In this case, Defendant fails to show that Edwards's testimony was, in fact, false. Defendant simply assumes, based on the State's acknowledgement that it did not receive the screenshot in question, that Edwards lied when she testified she sent it. As the State points out, however, it was possible for Edwards to have sent (or have believed she sent) the screenshot, but for the State to not have received it. This situation is not like *Hogervorst*—the only case Defendant cites in support of his argument. In *Hogervorst*, this Court reversed a conviction for bribery of a public official because the record clearly showed that the "payoffs" testified to were actually taxes paid by the defendant. 1975-NMCA-028, ¶¶ 1-5. Here, there is no such showing in the record of the falsity of Edwards's testimony or the State's knowledge of the same, and therefore Defendant's due process claim fails.

## II.     The District Court Did Not Abuse Its Discretion in Prohibiting Counsel From Inquiring About Edwards's Possession of a Football Jersey

**{6}**     Defendant next challenges the district court disallowing inquiry into Edwards's possession of one of Defendant's football jerseys. The State admitted into evidence a screenshot, taken by Edwards, of what the State purported to be Defendant's Pinterest profile showing an account name of *jgrantham088* and a picture depicting two of Defendant's football jerseys. During cross examination, defense counsel asked Edwards, "[W]hen you screenshot . . . this image . . . , who was in possession of that jersey?" The State objected on grounds of relevance, and the district court sustained the objection. Edwards then began to explain that she "ha[d] one of those jerseys" but the judge, interjecting, reiterated that the objection was sustained. Defendant argues on appeal that the district court abused its discretion in sustaining the State's relevance objection and that the error was not harmless. Because we conclude no abuse of discretion occurred, we do not address Defendant's harmless error argument.

**{7}**     A district court abuses its discretion when making an evidentiary ruling only if the ruling is "clearly against the logic and effect of the facts and circumstances of the case." *State v. Christmas*, 2002-NMCA-020, ¶ 8, 131 N.M. 591, 40 P.3d 1035 (internal quotation marks and citation omitted). We will not find the district court abused its discretion "unless we can characterize [the ruling] as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted). Defendant bears the burden

of establishing an abuse of discretion. *See State v. Smith*, 2016-NMSC-007, ¶ 27, 367 P.3d 420.

**{8}**　As noted, the district court sustained the State's objection on grounds of relevance. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action." Rule 11-401 NMRA. Defendant's trial theory was that Edwards created the accounts, then fabricated the threatening emails. Defendant argues that evidence of Edwards's having had one of Defendant's football jerseys in her possession would tend to make it more probable that she created the Pinterest and Gmail accounts.

**{9}**　Under the circumstances, we cannot say the district court's ruling was clearly untenable or not justified by reason. As the State observes, there was no proof that the Pinterest profile picture was created at a time when Edwards possessed one of the jerseys, and the profile picture associated with the *jgrantham088* Pinterest account showed *two* football jerseys. Thus, even if Edwards at some point possessed "one of [the] jerseys," as Defendant contends, that would not have tended to make it more likely she created the profile picture with two jerseys, let alone the Pinterest and Gmail accounts. In short, Defendant failed to establish the logical connection between Edwards's possession of one of Defendant's football jerseys and the fabrication of the accounts. *See State v. Duncan*, 1990-NMCA-063, ¶ 18, 113 N.M. 637, 830 P.2d 554 ("Relevance does not exist in a vacuum; instead, it is the logical relationship between evidence and a proposition in issue that the party seeks to prove."), *aff'd on other grounds*, 1991-NMSC-010, 111 N.M. 354, 805 P.2d 621. We cannot conclude the district court abused its discretion. *See State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363 ("When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion." (internal quotation marks and citation omitted)).

### III.　The District Court Did Not Commit Plain Error in Admitting the Emails

**{10}**　Defendant next argues the district court erred in admitting the threatening emails into evidence on the ground that the State failed to properly authenticate them. Because Defendant did not object to the admission, our review is for plain error. *See State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 ("Under Rule 11-103(D)-(E) NMRA, this Court may review evidentiary questions although not preserved if the admission of the evidence constitutes plain error." (alteration, internal quotation marks, and citation omitted)). "Under the plain error rule, there must be (1) error, that is (2) plain, and (3) that affects substantial rights." *State v. Gwynne*, 2018-NMCA-033, ¶ 27, 417 P.3d 1157 (internal quotation marks and citation omitted). We conclude no error, let alone plain error, occurred.

**{11}**　In *State v. Jesenya O.*, 2022-NMSC-014, ¶ 18, 514 P.3d 445, our Supreme Court recently clarified that "the authentication of social media evidence is governed by the traditional authentication standard set out in Rule 11-901 [NMRA.]" Under this rule, "the proponent must produce evidence sufficient to support a finding that the item is what the

proponent claims it is." Rule 11-901(A). "[I]n meeting this threshold, the proponent need not demonstrate authorship of the evidence conclusively; arguments contesting authorship go to the weight of the evidence, not its admissibility." *Jesenya O.*, 2022-NMSC-014, ¶ 18. Evidence may be authenticated "based on distinctive characteristics such as appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *Id.* ¶ 23 (alteration, internal quotation marks, and citation omitted). Moreover, authentication may be satisfied by circumstantial evidence alone. *See State v. Jackson*, 2018-NMCA-066, ¶ 18, 429 P.3d 674. Evidence is properly authenticated, and its admission, not error, "when . . . shown by a preponderance of the evidence to be what it purports to be." *Id.* ¶ 13 (internal quotation marks and citation omitted).

**{12}** In this case, the evidence showing that Defendant authored the emails was more than sufficient. First, Edwards testified that the email address belonged to Defendant—specifically, that: (1) she and Defendant communicated through Facebook and other social media; (2) Defendant's Facebook profile showed the email address *jgrantham088@gmail.com*; and (3) she saw Defendant log into his Facebook account using that email address. *See* Rule 11-901(B)(1) (providing that "[t]estimony of a [w]itness with [k]nowledge . . . that an item is what it is claimed to be" satisfies the authentication requirement). Second, Edwards testified that only she, Defendant, and Wolf knew the terms of their probation reflected in Defendant's emails. *See Jesenya O.*, 2022-NMSC-014, ¶ 28 ("[C]ommunications whose contents are known or knowable by only a handful of persons are routinely recognized as qualifying for authentication on the basis of their distinct characteristics."). Last, any doubts about whether the State met the foundational requirements are put to rest by considering the totality of the circumstances. *See State v. Romero*, 2019-NMSC-007, ¶¶ 42-43, 435 P.3d 1231 (considering the totality of the circumstances to conclude there was substantial corroborating evidence of a foundational fact). For one thing, an Instagram message from Defendant to Edwards, whose introduction into evidence Defendant does not challenge, included essentially the same content and distinctive characteristics as the email messages at issue. *See Jesenya O.*, 2022-NMSC-014, ¶ 28 (observing that where the content and substance of an electronic communication evince distinctive characteristics, there is foundational support for its authenticity). For another, Defendant implicitly admitted to writing the emails. Soon after Edwards disclosed to Wolf that Defendant had been sending threatening emails to her, Wolf confronted Defendant. On informing Defendant that he was violating the terms of his probation; that Wolf would be turning the emails over to law enforcement; and that he should expect to face severe consequences if the emails did not stop, Defendant responded, "The emails will stop."

**{13}** In sum, the State made a sufficient showing to permit a reasonable juror to believe that Defendant wrote the emails. *See Jesenya O.*, 2022-NMSC-014, ¶ 24. To the extent Defendant contends that others could have authored the emails, such argument goes "to the weight of the evidence, not its admissibility." *Id.* ¶ 31. The district court did not err in admitting the emails.

## IV.     Defendant's Conviction Is Supported by Sufficient Evidence

**{14}** Finally, we briefly address Defendant's argument that there was insufficient evidence to support his conviction. Our task in this regard is to determine if there is substantial evidence, either direct or circumstantial, to establish beyond a reasonable doubt every element essential to the conviction. *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515. In undertaking this task, "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We do not reweigh evidence or look for inferences that support a contrary verdict, because doing so "would substitute an appellate court's judgment for that of the jury." *State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285.

**{15}** Defendant's sufficiency argument is little more than a reiteration of his argument regarding the authenticity of the emails, along with a call to consider evidence in his favor. In particular, Defendant argues "it remains unclear" that it was he who sent the emails. Similarly, Defendant asserts, "The State failed . . . to show that the emails . . . were in fact sent by [Defendant]." Based on nothing more, Defendant asks us to conclude there was insufficient evidence that he knowingly intimidated or threatened Edwards. We decline to do so. On appeal, we "cannot consider the merit of evidence that may have supported a different result." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179. And as discussed, the State made a sufficient showing that Defendant authored the threatening emails. Whether the emails "were in fact" sent by Defendant was for the jury, not us, to resolve. Sufficient evidence supported Defendant's conviction.

## CONCLUSION

**{16}** For the foregoing reasons, we affirm.

**{17}   IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**GERALD E. BACA, Judge**