This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36479**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**ANGELO EDDIE ARAGON,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett Loveless, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** A jury convicted Defendant on fourteen felony charges arising from his armed robbery of a pharmacy. On appeal, Defendant claims the district court abused its discretion in denying his motion for a mistrial and a new trial based on a witness's in-court identification of him, and on the jury's re-enactment of part of the robbery in the jury room. He also challenges his four trafficking convictions, arguing that they violate his right to be free from double jeopardy and that they were not supported by sufficient

evidence. We vacate two of Defendant's trafficking convictions on double jeopardy grounds and otherwise affirm.

## BACKGROUND

**{2}** On January 30, 2015, two armed, masked men robbed a CVS pharmacy in Albuquerque. Surveillance cameras captured the robbery and showed three employees working behind the counter in the pharmacy when the men, one in a black hooded sweatshirt and the other in a gray hooded sweatshirt, climbed over the pharmacy counter and forced the employees to the ground. The man in the black hoodie "asked the pharmacist to go to the safe to get narcotics" while the man in gray, later identified as Defendant, stood watch over the other two employees lying on the floor. While the man in black filled a bag with drugs from the safe, Defendant spoke with one of the pharmacy technicians, Andrea Baca, as she lay on the floor. Baca testified that Defendant removed his mask and asked her where the Xanax was. Defendant collected several white bottles from nearby shelves in his arms and dropped them into a bag held by the man in black, and both men quickly left. The entire encounter lasted just over two minutes.

**{3}** After reviewing the surveillance footage, the police obtained still photographs of Defendant as he jumped over the pharmacy counter. Although he was wearing a hood and a mask that covered his forehead and his chin, much of his face was visible. Shortly before trial, Baca went to the district attorney's office to view and authenticate the surveillance videos in anticipation of trial. During trial, she identified Defendant as the man in gray. The jury found Defendant guilty on all charges. Defendant appeals.

## DISCUSSION

### I.    In-Court Identification

**{4}** The State called Baca as a witness at trial. While the State played the surveillance video, Baca explained what was happening to the jury. When the man in gray entered the picture, the prosecutor asked Baca, "who was that individual, if you don't mind pointing to the screen." Instead of pointing to the screen, Baca pointed to Defendant and said, "It was him." Defense counsel objected and requested a mistrial, stating that the witness had not made any prior identification and that this identification was contaminated because "of course she's going to point to the guy seated." The district court overruled Defendant's objection, stating that the defense would have the opportunity to cross-examine the witness and impeach her credibility. The prosecutor continued to question Baca about the video and she testified that after Defendant scaled the counter, he removed his mask to talk to her. Baca stated, "I noticed his face. He told me to put my head back down after I had a good look at him." After Baca finished testifying, Defendant renewed his oral motion for a mistrial, which the district court denied. After the jury returned its verdict, he filed a motion for a new trial on the same grounds. The district court held a hearing on the motion, at which Baca again testified, and the court later denied the motion.

**{5}** Defendant contends that the in-court identification violated his due process rights and that the "surprise" identification resulted from the State's violation of its discovery obligations. Although we review rulings on the admission of evidence and motions for mistrial and new trial for abuse of discretion, whether the identification violated Defendant's due process rights is a question of law that we review de novo. *State v. Hanson*, 2015-NMCA-057, ¶ 5, 348 P.3d 1070 ("We review the trial court's decision to exclude or admit evidence for an abuse of discretion."); *State v. Gutierrez*, 2005-NMCA-093, ¶ 9, 138 N.M. 147, 117 P.3d 953 (stating that we review a motion for mistrial for abuse of discretion but review constitutional questions presented therein de novo), *aff'd in part, rev'd in part on other grounds*, 2007-NMSC-033, ¶ 9, 142 N.M. 1, 162 P.3d 156; *see also State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363 ("We will not disturb a trial court's exercise of discretion in denying or granting a motion for a new trial unless there is a manifest abuse of discretion." (alteration, internal quotation marks, and citation omitted)).

## A. The In-Court Identification Did Not Violate Defendant's Due Process Rights

**{6}** Defendant first argues that Baca's in-court identification was tainted by having seen the surveillance videos at the district attorney's office prior to trial. As a general rule, an in-court identification is admissible if it is "independent of, and not tainted by, [an] out-of-court identification." *State v. Jacobs*, 2000-NMSC-026, ¶ 30, 129 N.M. 448, 10 P.3d 127. In determining whether an identification is tainted and impermissible, we look at whether the procedure employed by law enforcement was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification and, if so, under the totality of the circumstances, whether the identification was nonetheless reliable." *State v. Stampley*, 1999-NMSC-027, ¶ 14, 127 N.M. 426, 982 P.2d 477 (internal quotation marks and citation omitted); *State v. Ramirez*, 2018-NMSC-003, ¶ 30, 409 P.3d 902 (quoting *Perry v. New Hampshire*, 565 U.S. 228 (2012), for the proposition that "due process 'does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement' "); *State v. Johnson*, 2004-NMCA-058, ¶ 13, 135 N.M. 567, 92 P.3d 13 ("Reliability of the identification is a due process requirement.").

**{7}** As an initial matter, there is no indication that any out-of-court identification occurred in this case. Baca testified that she was never asked to identify anyone during her meetings with the State, and the district court found that "[n]either [Baca] nor the other employees identified Defendant as a perpetrator to the police through a photo array or any other identification procedure." This finding is unchallenged on appeal. *See* Rule 12-318(A)(4) NMRA ("A contention that a . . . finding of fact is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence."); *see also Ramirez*, 2018-NMSC-003, ¶ 32 ("The in-court, eyewitness identifications here were not the result of impermissible, suggestive, pretrial, law-enforcement-orchestrated procedures. No such procedures occurred."). Thus, there is no indication that any prior identification tainted Baca's in-court identification here.

**{8}** Moreover, Defendant has not established either that "the alleged taint, if there was any, arose as a consequence of improper law enforcement influence," *Ramirez*, 2018-NMSC-003, ¶ 34, or that allowing a witness to view surveillance video of the actual crime is inherently suggestive conduct that gives rise to a substantial likelihood of irreparable misidentification. To the contrary, not only is "[p]hotographic evidence, including surveillance videos, . . . admissible at trial under the 'silent witness' theory," *State v. Sweat*, 2017-NMCA-069, ¶ 21, 404 P.3d 20, but we have held that "[l]ay opinion identification testimony is helpful to a determination of whether the individual depicted in a surveillance recording is the defendant where there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." *Id.* ¶ 22 (alteration, internal quotation marks, and citation omitted); *see id.* (identifying five factors that are relevant to determine whether a lay witness is more likely than the jury to identify the defendant correctly and stating that the existence of even one of these factors may be sufficient).

**{9}** Defendant, citing *United States v. Emanuele*, 51 F.3d 1123 (3d Cir. 1995), argues that allowing Baca to view the surveillance videos, coupled with her viewing of Defendant at trial, created a substantial risk of misidentification. In *Emanuele*, the Court held that "to walk a defendant—in shackles and with a U.S. Marshal at each side— before the key identification witnesses is impermissibly suggestive." *Id.* at 1130. Key to the holding in that case were the facts that the defendant was handcuffed, escorted by marshals, and singled out, and walked past two trial witnesses who had been unable to conclusively identify him prior to trial. *Id.* at 1130. From this encounter, the witnesses concluded, "it has to be him." *Id.* at 1127; *see also id.* at 1130 (distinguishing the facts in *Emanuele* from *United States v. Domina*, 784 F.2d 1361, 1369-70 (9th Cir.1986), in which "it was not unduly suggestive for a victim to view a defendant leaving the courtroom during recess, because the defendant was *not* handcuffed, *not* escorted by marshals, and *not* otherwise singled out."). Defendant does not allege that he was handcuffed, escorted by law enforcement in front of Baca, or singled out in this case, and we reject his suggestion that his mere presence in the courtroom was impermissibly suggestive. *See Ramirez*, 2018-NMSC-003, ¶ 34 (holding that the defendant's objection to the fact that the in-court identifications occurred in a courtroom, and that his seat position, ethnicity, and gender were all suggestive, failed to establish "that the alleged taint, if there was any, arose as a consequence of improper law enforcement influence"). Defendant has not demonstrated any analogue to the facts presented in *Emanuele* as a basis to conclude that Baca's in-court identification was based upon impermissible, suggestive conduct by the State, and, as set forth above, Defendant has not persuaded us that the use of the surveillance footage created substantial likelihood of misidentification here.

**{10}** For these reasons, we conclude that Baca's in-court identification did not violate Defendant's due process rights, and that the district court did not abuse its discretion in denying Defendant's motions on that basis.

## B.    Defendant Did Not Preserve the Alleged Discovery Violation

**{11}** Defendant also argues that the State was required to disclose "identification testimony" pursuant to Rule 5-501(A)(5) NMRA, and because the State failed to do so here, he was unfairly surprised by the in-court identification and was unfairly prejudiced in his ability to prepare an adequate defense. Defendant does not cite where he preserved this argument below, and after performing our own review of the record we do not see that Defendant raised this argument to the district court. *See* Rule 12-321(A) NMRA ("To preserve an issue for review it must appear that a ruling or decision by the [district] court was fairly invoked."). Nor has Defendant requested we review the issue for plain or fundamental error, and we decline to review this unpreserved claim. *See* Rule 12-321(B)(2) (permitting the appellate court in its discretion to consider issues involving plain or fundamental error); *see also State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 ("We generally do not consider issues on appeal that are not preserved below." (internal quotation marks and citation omitted)).

**{12}** We conclude that the district court did not abuse its discretion by denying Defendant's motion for mistrial or a new trial.

## II.   Jury Experimentation

**{13}** Defendant also asserts that he was entitled to a new trial based on his proffer to the court that, during deliberations, the jury had a tall male juror raise his leg over the table in the jury room to see whether a man of Defendant's approximate height might go over a raised pharmacy counter like the man in gray did in the surveillance video. Defendant argues that the juror's experiment injected extraneous information into the jurors' deliberations. The district court denied Defendant's motion, concluding that Defendant "failed to make a preliminary showing that extraneous information actually reached the jury as opposed to the jury using information presented at trial." We "will not overturn a [district] court's denial of a motion for a new trial unless the [district] court abused its discretion." *State v. Mann*, 2002-NMSC-001, ¶ 17, 131 N.M. 459, 39 P.3d 124.

**{14}** As a general rule "a juror may not testify about any statement made or incident that occurred during the jury's deliberations" or about their mental processes in reaching a verdict. Rule 11-606(B) NMRA. One exception to this rule is when "extraneous prejudicial information was improperly brought to the jury's attention." Rule 11-606(B)(2)(a). "The party requesting a new trial on the basis that the jury was exposed to extraneous information must make a preliminary showing that he or she has competent evidence that material extraneous to the trial actually reached the jury." *Mann*, 2002-NMSC-001, ¶ 19. Defendant must establish "the extraneous information actually reached the jury." *Id.* "This burden is not discharged merely by allegation; rather, Defendant must make an affirmative showing that some extraneous influence came to bear on the jury's deliberations." *Id.*

**{15}** Here, Defendant failed to make a preliminary showing that he had competent evidence that the jury was exposed to extraneous information. Based on Defendant's proffer, the jury re-enacted a scene from the surveillance video admitted at trial. Our

Supreme Court has long acknowledged that "the jury must be allowed latitude to evaluate evidence and to use its experience to deliberate," including by experimenting with the evidence before it. *State v. Chamberlain*, 1991-NMSC-094, ¶¶ 36-39, 112 N.M. 723, 819 P.2d 673 (holding that the jury's experiment with properly admitted evidence—removing a gun from its holster to compare the noise with a noise on an audiotape—was not improper because it was based on facts or evidence properly before the jury, and was based on their own judgment and experience in examining the evidence). To the extent the jury's deliberations were based on their extrinsic knowledge—their "common or acquired sense"—of how people move over objects, our Supreme Court has held that this is a permissible part of the deliberative process and does "not fall into the category of extrinsic influence." *Mann*, 2002-NMSC-001, ¶ 27 (internal quotation marks and citation omitted); *see id.* ¶ 38 ("A juror may properly rely on his or her education, experience and common sense during deliberations; thorough discussion, informed by expertise and based on evidence at trial, does not constitute extraneous prejudicial information."). And by testing the evidence before them using their own knowledge, experience, and senses, jurors do "not gain independent evidence upon which to reach [their] conclusion, but simply test[] the evidence already introduced, in order to properly determine its truth or probative value." *Chamberlain*, 1991-NMSC-094, ¶ 38 (emphasis, internal quotation marks, and citation omitted).

**{16}** For these reasons, because Defendant has not met his burden to make a preliminary showing that extraneous information reached the jury, we conclude that the district court did not abuse its discretion in denying Defendant's motion for a new trial.

### III. Double Jeopardy

**{17}** Defendant was convicted on four counts of trafficking controlled substances by possession with intent to distribute, contrary to Section 30-31-20—one count for each of four types of drugs taken from the pharmacy (oxycodone (Count 7), OxyContin (Count 8), Percocet (Count 9), and Endocet (Count 10)). He contends that his multiple convictions violate his right to be free from double jeopardy. "Double Jeopardy protects against multiple punishments for the same offense," *State v. Silvas*, 2015-NMSC-006, ¶ 8, 343 P.3d 616, and "[a] double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. This case is a "unit-of-prosecution" case involving multiple convictions under the same statute, so we must determine "whether the [L]egislature intended punishment for the entire course of conduct or for each discrete act." *Swafford v. State*, 1991-NMSC-043, ¶ 8, 112 N.M. 3, 810 P.2d 1223. "To determine the Legislature's intent with respect to the unit of prosecution for a criminal offense, . . . . we review the statutory language for guidance on the unit of prosecution. The plain language of the statute is the primary indicator of legislative intent." *Ramirez*, 2018-NMSC-003, ¶ 47 (internal quotation marks and citations omitted). "If the unit of prosecution is clear from the language of the statute, the inquiry is complete." *Swick*, 2012-NMSC-018, ¶ 33.

**{18}** Here, we conclude that the unit of prosecution is clear from the language of the statute. Section 30-31-20(A)(3)(a) prohibits the trafficking of "a controlled substance

enumerated in Schedule I or II that is a narcotic drug" and so expressed the prohibited act using a singular noun. *See Ramirez*, 2018-NMSC-003, ¶ 53 ("It is well established— so much so that the proposition is repeatedly expressed in non-precedential opinions— that where a statute prohibits the doing of some act to a victim specified by a singular noun, 'a person' for example, then 'the person' is the unit of prosecution."); *cf. State v. Tidey*, 2018-NMCA-014, ¶ 10, 409 P.3d 1019 ("Seeing no clear indication of a unit-of-prosecution in the statute" when "paraphernalia" could be singular or plural in statute prohibiting possession of paraphernalia). In addition, the State points to a non-precedential opinion in which we said the Legislature has defined the unit of prosecution in Section 30-31-20(A)(3) as the number of different controlled substances possessed. *See State v. Chavez*, No. A-1-CA-35504, mem. op. ¶ 14 (N.M. Ct. App. Nov. 26, 2018) (non-precendential). We agree with the State and with our prior analysis that the unit of prosecution is the number of different types of drugs possessed. *See also State v. Borja-Guzman*, 1996-NMCA-025, ¶ 13, 121 N.M. 401, 912 P.2d 277 (analyzing Section 30-31-20(A) and concluding that "[t]he various means of trafficking . . . evinces a legislative intent to authorize prosecution and punishment for each separate transfer of a controlled substance").

**{19}**    The State admits that two of Defendant's trafficking convictions should be vacated, as OxyContin is merely a brand name of oxycodone, and Percocet and Endocet are both brand names for a combination of oxycodone and acetaminophen. Although we are not bound by the State's concessions, *State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738, we accept them here and hold that two of Defendant's convictions for trafficking by possession with intent to distribute must be vacated. The remaining two convictions—one for oxycodone/OxyContin and one for Percocet/Endocet—are for different controlled substances and do not violate double jeopardy.

## IV.    Sufficiency of the Evidence

**{20}**    Finally, Defendant argues that the evidence was insufficient to sustain his four convictions for trafficking by possession with intent to distribute, contrary to Section 30-31-20 (Counts 7-10), and two convictions for possession with intent to distribute, contrary to Section 30-31-22(A)(2) (Counts 11 and 12). "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citations omitted). "Substantial evidence is defined as that evidence which is acceptable to a reasonable mind as adequate support for a conclusion." *State v. Flores*, 2010-NMSC-002, ¶ 2, 147 N.M. 542, 226 P.3d 641 (internal quotation marks and citation omitted). "[W]e must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

**{21}** Defendant argues that his "possession could only be based on an inference from a finding that he was the 'guy in the gray hoodie,' and a finding of his intent to transfer could only be based on an inference from the inferred possession." We sustain convictions when they are based on "reasonable" inferences. *See id.* "A reasonable inference is a conclusion arrived at by . . . logical deduction from facts admitted or established by the evidence[,]" as opposed to a "supposition or conjecture." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (internal quotation marks and citation omitted).

**{22}** Here, while Defendant argues that the jury could only have inferred that Defendant was "the guy in the gray hoodie," that conclusion is supported by direct evidence in the record. Baca identified Defendant as the man in gray, and the surveillance video showed the perpetrator's face during the commission of the crime. Based on this evidence, the jury could have reasonably concluded that Defendant was the man in gray. The video evidence also demonstrates possession through Defendant's act of gathering and removing controlled substances from the pharmacy.

**{23}** While Defendant argues that the jury would have to infer that Defendant intended to sell or transfer the drugs, we have held that "[i]ntent to distribute may be inferred when the amount of controlled substance possessed is inconsistent with personal use." *State v. Hubbard*, 1992-NMCA-014, ¶ 9, 113 N.M. 538, 828 P.2d 971. The CVS pharmacist who witnessed the robbery testified that the amounts of oxycodone, Percocet, and Endocet stolen were more than would normally be prescribed to any one person. And a detective qualified as an expert in narcotics trafficking testified that the amounts of stolen drugs were consistent with trafficking. The jury reasonably could have concluded that Defendant possessed an amount of narcotic substance sufficient to support an intent to distribute. Therefore, the evidence was sufficient to sustain Defendant's trafficking and possession with intent to distribute convictions.

## CONCLUSION

**{24}** Based on the foregoing, we remand to the district court to vacate two of Defendant's convictions of trafficking by possession with intent to distribute and resentence Defendant accordingly. We affirm his remaining convictions.

**{25}  IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**BRIANA H. ZAMORA, Judge**