2007-NMCA-047

157 P.3d 728

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Steven R. MORELAND, Defendant–Appellee.**

**No. 25,831.**

Court of Appeals of New Mexico.

Feb. 28, 2007.

Certiorari Granted, No. 30,301, April 20, 2007.

Gary K. King, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellant.

Doerr & Knudson, P.A., Stephen Doerr, Portales, NM, for Appellee.

## OPINION

VIGIL, Judge.

{1} The State appeals from an order of the district court granting Defendant a new trial, asserting: (1) the district court had no jurisdiction to grant Defendant's motion, and (2) if it did have jurisdiction, the district court abused its discretion. We affirm. Since other rulings of the district court may or may not be repeated on retrial, we do not address them in this appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} Defendant and his live-in fiancee injected themselves with methamphetamine. While both of them were intoxicated from the drug, she said Defendant attacked her in a variety of ways, threatening and hitting her with a hatchet, attempting to drown her in the toilet and in the bathtub, trying to pull off her finger, dragging her around the house with a chain, trying to choke her with toothpaste, and tearing off some of her clothes. She eventually ran out of the house and called 911.

{3} When the police arrived, Defendant had already left and he was located and arrested at his mother's house. Defendant's mother and maybe Defendant himself told the officers he had overdosed on some drugs and Defendant said he needed to go to the hospital. At the hospital, Defendant struggled with the officers, which resulted in charges of battery and assault on peace officers, disorderly conduct, and resisting a peace officer.

{4} After trial, a jury found Defendant guilty of first degree kidnaping, possession of a controlled substance, possession of drug paraphernalia, assault with intent to commit the violent felony of murder on a household member, battery on a peace officer, assault on a peace officer, disorderly conduct, and resisting or evading a peace officer. The jury found Defendant not guilty of aggravated battery with a deadly weapon against a household member (using a hatchet) and aggravated battery with a deadly weapon against a household member (using a chain).

{5} The jury verdicts were returned in open court on August 23, 2003, and the district court ordered that Defendant be jailed pending imposition of sentence. The district court then committed Defendant to the Department of Corrections for a sixty-day diagnostic evaluation on September 9, 2003. The psychologist who evaluated Defendant at the Department of Corrections reported that while Defendant had valid profile indicators on two separate tests, his profile was "inconsistent with any established profile type[.]" The psychologist further noted, "It appears that when [Defendant] is under the influence of illicit substances, he experiences an idiosyncratic type of intoxication and engages in hostile behavior, which he would not normally display, if he were not under the influence of an illicit substance."

{6} In light of the foregoing information, counsel for Defendant made arrangements for a more extensive psychological evaluation. The State did not oppose Defendant's motion asking that a police officer transport him from jail to Dr. Samuel Roll's office for the evaluation and return Defendant to jail at his own expense. Consequently, the district court granted the motion on January 12, 2004, and directed that Defendant was to be taken to Dr. Roll's office for the evaluation on January 19, 2004.

{7} The sentencing hearing was set for February 25, 2004. At that time Defendant's attorney asked that the hearing be continued because he was filing a motion for new trial based on the two evaluations. However, Dr. Roll had asked for raw data which he had not yet received and he had not yet completed his forensic evaluation report. The State objected, arguing that under Rule 5–614(C) NMRA, Defendant's motion for a new trial was untimely because more than ten days had passed since the verdict. The district court wanted to consider Dr. Roll's assessment, and vacated the hearing, directing defense counsel to have the sentencing hearing reset upon receipt of Dr. Roll's report. Dr. Roll completed his findings in a report dated June 18, 2004. In the meantime, the district court had ordered a separate trial on certain counts in the indictment, and they were set to be tried on June 28, 2004. Defendant had undergone a competency examination to ascertain whether he could proceed to trial on the severed counts, but the results of the examination were not available. The State therefore did not oppose Defendant's motion, filed on June 22, 2004, to vacate that trial setting. A stipulated order vacating that trial was filed on June 24, 2004.

{8} On September 7, 2004, the district court set Defendant's motion for new trial to be heard on January 20, 2005. At the hearing, the court and the parties realized that Defendant's motion for a new trial had been placed in the back of the court file and not file stamped. Defendant said he thought the motion was filed in open court at the original sentencing hearing on February 25, 2004. He said that when the State had asserted that the motion for new trial was not timely,

more that ten days having elapsed since the verdicts, it should have been noted that the motion was filed in open court on that day. The State agreed, and the district court certified that Defendant's motion for a new trial was filed as of February 25, 2004. Following the January 20, 2005 hearing, the district court issued a letter on April 20, 2005, stating it was going to grant Defendant's motion for new trial. The State appeals from the formal order, which was subsequently filed on May 25, 2005, granting the motion. The State argues that the district court had no jurisdiction to grant the motion for two reasons: Defendant did not file the motion on time, and if he did, the district court did not act on time, because it was already deemed denied by operation of law. The State also argues that on the merits, the district court abused its discretion in granting Defendant a new trial. We affirm.

## DISCUSSION

### Issue 1: The District Court's Jurisdiction to Grant the Motion for New Trial

{9} The question of whether the district court had jurisdiction to grant Defendant's motion for new trial presents a question of law, which we review de novo. *City of Roswell v. Smith*, 2006–NMCA–040, ¶ 10, 139 N.M. 381, 133 P.3d 271. In this case, Rule 5–614 and Rule 5–104(B) NMRA of the Rules of Criminal Procedure for the District Courts are relevant to our jurisdictional inquiry. We apply the same rules to the construction of these rules as we apply to statutes. *See In re Michael L.*, 2002–NMCA–076, ¶ 9, 132 N.M. 479, 50 P.3d 574. As such, our interpretation of the rules is also de novo. *See State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995) (stating that interpretation of a statute is a question of law reviewed de novo).

{10} Rule 5–614 is entitled "Motion for new trial" and provides:

**A. Motion.** When the defendant has been found guilty, the court on motion of the defendant, or on its own motion, may grant a new trial if required in the interest of justice.

**B. Evidence on motion.** When a motion for new trial calls for a decision on any question of fact, the court may consider

evidence on such motion by affidavit or otherwise.

**C. Time for making motion for new trial.** A motion for new trial based on the ground of newly discovered evidence may be made only before final judgment, or within two (2) years thereafter, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for new trial based on any other grounds shall be made within ten (10) days after verdict or finding of guilty or within such further time as the court may fix during the ten (10) day period. If a motion for new trial is not granted within thirty (30) days from the date it is filed, the motion is automatically denied.

**D. Procedure; hearing.** When the defendant has been found guilty by a jury or by the court, a motion for new trial may be dictated into the record, if a court reporter is present, and may be argued immediately after the return of the verdict or the finding of the court. Such motion may be in writing and filed with the clerk. Such motion, written or oral, shall fully set forth the grounds upon which it is based.

**E. Waiver.** Failure to make a motion for a new trial shall not constitute a waiver of any error which has been properly brought to the attention of the court.

{11} The State contends that the district court lacked jurisdiction to grant a new trial in this case. First, the State contends that Defendant's motion for new trial was filed too late under Rule 5–614(C) because it was filed more than ten days after the verdict. Second, the State argues that even if the motion was based on newly discovered evidence and was filed on time, the district court lost jurisdiction over the motion under Rule 5–614(C) because it was not granted within thirty days from the date it was filed. Considering the motion to have been filed on February 25, 2004, the State asserts it was deemed denied under Rule 5–614(C), thirty days later, with the result that the district court did not have jurisdiction to grant the motion when it issued its letter decision on April 20, 2005, or when the formal order was later filed on May 25, 2005.

{12} We first determine whether Defendant's motion for a new trial was timely filed. Defendant's motion asserts it is based on his psychological and psychiatric condition that was not known at the time of trial, and the order granting the new trial is based on Defendant's psychological disorder, which the district court found was not discoverable at the time of trial. The motion was premised upon, and granted because of, newly discovered evidence. Since the ten-day limitation under Rule 5–614(C) does not apply to a motion based on newly discovered evidence, we do not consider it further.

{13} Concerning newly discovered evidence, Rule 5–614(C) states in pertinent part, "[a] motion for new trial based on the ground of newly discovered evidence may be made only before final judgment, or within two (2) years thereafter." In this case, no final judgment was entered prior to the district court's decision to grant the motion for a new trial. The verdicts of the jury do not constitute a final judgment because Defendant still needed to be sentenced. Further, the order to undergo a sixty-day commitment to the Department of Corrections for a diagnostic evaluation was not a sentence; it was ordered to assist the district court in determining an appropriate sentence. It is well settled that until a sentence for the crime is imposed, there is no final judgment in a criminal case. *See State v. Morris,* 69 N.M. 89, 91, 364 P.2d 348, 349 (1961) (holding that a judgment in a criminal case is not final until sentence is imposed). The district court determined, with the agreement of the parties, that the motion for new trial was filed as of February 25, 2004. Since no sentence had been filed as of that date, the motion for new trial was filed "before final judgment" as specified in Rule 5–614(C). We therefore hold that Defendant's motion for a new trial, filed as of February 25, 2004, based on newly discovered evidence, was timely filed as required by Rule 5–614(C).

{14} Next, we consider the State's argument that the district court lost jurisdiction to grant the motion for a new trial under Rule 5–614(C), which provides: "If a motion for new trial is not granted within thirty (30) days from the date it is filed, the motion is

automatically denied." Clearly more than thirty days elapsed from the time the motion for new trial was filed on February 25, 2004, and the order granting the motion was filed on May 25, 2005. However, the State's argument overlooks another provision of the Rules of Criminal Procedure for the District Courts in the context of what transpired in the district court.

{15} When the parties convened for sentencing on February 25, 2004, Defendant requested and was granted a continuance for the purpose of receiving the forensic evaluation by Defendant's expert, Dr. Roll, whose report had not yet been received. The district court granted the continuance, stating that the report should be received and the sentencing hearing reset.

{16} Rule 5–104(B) states:

**B. Enlargement.** When by these rules or by a notice given thereunder or by order of court, an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion:

(1) with or without motion or notice, order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order; or

(2) upon motion made after the expiration of the specified period permit the act to be done.

The court may not extend the time for filing a motion for new trial, for filing a notice of appeal, for filing a motion for acquittal or for filing a motion for an extension of time for commencement of trial.

In *State v. Sandoval*, 2003–NMSC–027, ¶ 11, 134 N.M. 453, 78 P.3d 907, our Supreme Court expressly stated, "[f]or timely-filed motions, . . . Rule 5–104(B)(1) recognizes the district court's discretion to enlarge the period within which the act is required or allowed to be done." Since we have already concluded that Defendant's motion for new trial was timely, we consider whether the district court extended the time for it to decide the motion as permitted by Rule 5–104(B)(1).

{17} As we have already pointed out, through some error, it was not originally noted that Defendant's motion for new trial was filed in open court on February 25, 2004. Nevertheless, the district court certified that the motion had in fact been filed as of February 25, 2004, by agreement of the parties when this mistake was discovered. That same day, February 25, 2004, Defendant moved for a continuance, which constituted a request for an enlargement of time for the district court to either rule on the motion for new trial or sentence him. The district court granted Defendant's continuance motion because it wanted to consider Dr. Roll's report and it was not yet completed. The effect of the order was that "for cause shown" the district court exercised its discretion under Rule 5–104(B)(1) and ordered that the time be enlarged within which it would either rule on the motion for new trial or sentence Defendant. The district court's decision to certify the motion for new trial as having been filed in open court as of February 25, 2004, is supported by substantial evidence. In addition, we hold that the district court did not abuse its discretion in ordering a continuance for the purpose of allowing Dr. Roll's evaluation report to be prepared. Finally, we cannot say that under the facts of this case, there was any undue delay or prejudice to the State. Defendant remained in custody. Dr. Roll's evaluation report was not issued until June 18, 2004, and on June 24, 2004, the State agreed to continue trial of the severed counts pending a report of Defendant's competency to stand trial on those charges. On September 7, 2004, the district court set the hearing on Defendant's motion for new trial to be heard on January 20, 2005, and the record contains no objection by the State or prejudice argument concerning the hearing date.

{18} We hold that Defendant's motion for new trial was not automatically denied by Rule 5–614(C) because within thirty days of the filing of the motion (in fact, the very day that the motion was filed in open court), the district court enlarged the time for it to rule on the motion as allowed by Rule 5–104(B)(1). Therefore, the district court had jurisdiction to grant the motion for new trial on May 25, 2005, when the order was filed.

{19} For their separate purposes, the parties cite to three cases as controlling the outcome of this case. They are *State v. Lucero*, 2001–NMSC–024, ¶¶ 4–10, 130 N.M. 676, 30 P.3d 365; *Sanchez v. Saylor*, 2000–NMCA–099, ¶¶ 28–29, 129 N.M. 742, 13 P.3d 960; and *State v. Ratchford*, 115 N.M. 567, 571, 855 P.2d 556, 560 (1993). These cases, however, are not applicable, nor do they conflict with our decision here.

{20} *Ratchford* was decided before *Sandoval* and did not consider whether and under what circumstances Rule 5–104(B) has any effect on Rule 5–614(C). *Sanchez* involved the circumstance of a notice of appeal divesting the district court of jurisdiction. And *Lucero* involved an untimely motion. Those cases are not helpful to our analysis here.

{21} The State relies on *Martinez v. Friede*, 2004–NMSC–006, ¶ 13, 135 N.M. 171, 86 P.3d 596, to argue that the policy of encouraging the expeditious handling of post-trial motions would be thwarted by a decision holding that the district court retains jurisdiction to decide a motion for new trial under the circumstances of this case. We disagree for several reasons. First, we question how important that policy is inasmuch as the Supreme Court recently adopted revised Rules of Civil Procedure eliminating all thirty-day, deemed-denied language in those rules. *See* Rules 1–052, 1–054.1, and 1–059 NMRA (as amended effective August 21, 2006). Second, *Martinez* did not consider the effect of any rule like Rule 5–104(B).

{22} Third, although the Supreme Court ruled that the district court did not have authority under Rule 1–059, it also held that under Rule 1–060(B) NMRA (providing that for specified reasons, "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding"), a district court retains a "reservoir of equitable power" to assure that justice has been done, and may, in exceptional circumstances, reopen judgment and order a new trial sua sponte. *Martinez*, 2004–NMSC–006, ¶ 15, 135 N.M. 171, 86 P.3d 596 (internal quotation marks and citation omitted). Ultimately, the district court order granting the motion for a new trial was affirmed. *Id.* ¶ 28. Consistent with *Martinez*, Rule 5–614(A) could also be construed as reserving to the district court a "reservoir of equitable power" to assure that justice is done, and order a new trial sua sponte beyond the thirty days specified in Rule 5–614(C). Rule 5–614(A) specifically states, "When the defendant has been found guilty, the court on motion of the defendant, or *on its own motion*, may grant a new trial if required in the interest of justice." (Emphasis added.)

{23} In summary, we hold that Defendant's motion for new trial was timely filed and that the district court had jurisdiction to grant the motion because it was not deemed automatically denied under Rule 5–614(C). We therefore proceed to determine whether the district court abused its discretion in granting the motion.

## Issue 2: The District Court's Decision to Grant Defendant's Motion for a New Trial

{24} The district court found that Defendant suffers from a disorder that, if presented to a jury, would have warranted an instruction on diminished capacity, and that Defendant's condition was not discoverable by counsel at the time of trial. No instruction on diminished capacity was given at Defendant's trial. Accordingly, the district court granted Defendant a new trial.

{25} "[W]e will not disturb a [district] court's exercise of discretion in denying or granting a motion for a new trial unless there is a manifest abuse of discretion." *State v. Garcia*, 2005–NMSC–038, ¶ 7, 138 N.M. 659, 125 P.3d 638. "Because the function of passing upon motions for new trial on newly discovered evidence belongs naturally and peculiarly, although not exclusively, to the [district] court, the discretion of a [district] court is not to be lightly interfered with." *Id.* (internal quotation marks and citations omitted). In *Garcia*, our Supreme Court held that this Court erred in reversing the district court's order granting a new trial because we did not give sufficient deference to the district court's determination that the newly discovered evidence would probably change the result in a new trial, and it con-

cluded that the "sum of the district court judge's findings justif[ied] the decision to grant a new trial." *Id.* ¶ 17.

{26} To justify a new trial on grounds of newly discovered evidence the newly discovered evidence must satisfy all of the following requirements: "(1) it will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of due diligence; (4) it must be material; (5) it must not be merely cumulative; and (6) it must not be merely impeaching or contradictory." *Id.* ¶ 8 (quoting *State v. Volpato,* 102 N.M. 383, 384–85, 696 P.2d 471, 472–73 (1985)).

{27} The State argues that Defendant failed to prove prongs 2 and 3 of the *Volpato* test. Specifically, the State argues that it was known before trial that Defendant had injected methamphetamine on January 28, 2003. Further, the fact that methamphetamine causes violent behavior was nothing new to Defendant: at trial, the State explored with Defendant's fiancee her extensive history of violence and drug use, and Defendant's mother gave a police statement two years before trial in which she said that she was "very frightened" of her son when he was on drugs. Moreover, Defendant's fiancee testified that she and Defendant shot up methamphetamine and Defendant was "acting crazy" on the date of the incidents. The State further argues that it cannot be said that Defendant suffers from a formally classified "mental disease or disorder"; and that, even if he is considered to be suffering from one, Defendant's counsel should have exercised due diligence in searching out any basis for a diminished capacity instruction prior to trial. Accordingly, the State contends, the district court misapplied the applicable law or abused its discretion because its ruling was "clearly against the logic and effect of the facts and circumstances of the case." *See State v. Woodward,* 121 N.M. 1, 4, 908 P.2d 231, 234 (1995).

{28} Finally, the State argues that Defendant's counsel's decision not to pursue a diminished capacity instruction in this case was simply a trial strategy decision that failed, and Defendant should not be allowed a sec-

ond chance to present a new trial strategy. At trial, Defendant's defense theory rested on efforts to show that Defendant was not a "bad person" who uses drugs, that Defendant tried to stop his fiancee from using methamphetamine, and that she was the methamphetamine user who became violent, hallucinated, and lied about the events at issue. A new trial, the State argues, will allow Defendant to pursue a new defense theory: Defendant's extensive methamphetamine use exonerates him of the specific intent crimes he committed.

{29} The district court explained its application of *Volpato* in its letter decision, stating:

... [Defendant] argues that he should be entitled to a diminished capacity instruction because of his use of methamphetamine during the events constituting the offenses charged.

[The] Detention officer ... testified that [Defendant] has always displayed good behavior during his [two] years incarceration period. She called him a "model prisoner." She has never seen him act in such a manner to indicate he had any mental defects.

Dr. Samuel Roll testified that he reviewed the Diagnostic Evaluation and performed a Psychological Evaluation of [Defendant]. He determined that [Defendant's] reaction to methamphetamine is idiosyncratic. [Defendant] is incapable of dealing with overstimulation. When using drugs, [Defendant]'s coping deficit index is over taxed. His executive autonomous functions, or free will is adversely affected resulting in diminished capacity. Dr. Roll testified that this was not discovered during the pre-trial phase without testing. The Diagnostic Evaluation noted 'There is a possibility that [Defendant] might have some type of impulse control disorder, but none could be substantiated during this evaluation period' (Diagnostic Evaluation Page. 5).

The Court will find that [Defendant]'s condition was not discoverable prior to trial. Had the jury been presented evidence of Dr. Roll's evaluation, an instruction on

diminished capacity [UJI 14–5111 NMRA] would have been appropriate. And, if the jury found [Defendant]'s capacity had been diminished, the result would have been different. Accordingly, the Court will grant the Motion for a New Trial on those counts requiring specific intent.

The formal order granting Defendant a new trial then makes the following specific findings of fact:

[1.] [Defendant] suffered from a disorder that, if presented to the jury in his trial, would have warranted an instruction on diminished capacity pursuant to [UJI 14–5111].

[2.] [Defendant]'s condition was undiscoverable by prior counsel at time of trial.

On the basis of these findings, the new trial was granted. These findings and conclusions of the district court are supported by the testimony presented at the hearing on the motion for a new trial and the diagnostic evaluations prepared by both the State's and Defendant's experts.

{30} The State's expert who performed the diagnostic evaluation after the trial stated that while Defendant produced valid profiles on both structured objective measures of personality, "[h]is profile was inconsistent with any established profile type." The State's expert also stated: "It appears that when he is under the influence of illicit substances, he experiences an idiosyncratic type of intoxication and engages in hostile behavior, which he would not normally display, if he were not under the influence of an illicit substance." Further, the State's expert said, "There is a possibility that [Defendant] might have some type of impulse control disorder, but none could be substantiated during this evaluation period."

{31} At the hearing on the motion for new trial, Dr. Roll specifically stated that off of drugs Defendant already has a diminished thinking capacity, which the use of methamphetamine makes more severe: "[W]e cannot expect him to think; to reason; to perceive correctly; to access reality correctly; or to use any other host of intellectual skills that we need for decision making." Further, and most significantly, Dr. Roll said that a normal lay person could not determine this fact

from working and visiting with Defendant. Thus, what was not known and could not be discovered by any lay person such as Defendant's fiancee, Defendant's mother, or Defendant's counsel, was the extent to which, even off methamphetamine, Defendant was "less capable than most people of coming to reasonable conclusions about relationships, between events, and maintaining a connected flow of associations in which they follow each other in a comprehensive manner," as his brief contends. As such, although looking and acting normally when not under the influence of methamphetamine, Defendant, again in the words of his brief, has "severe ... deficits," including "an impaired thinking process"; he is someone who is "incapable, in a very stable way, of dealing with new stimulation and especially with over stimulation"; his "efforts to focus his attention with precision, and to synthesize his experience, falls below that of most people." Dr. Roll also specifically testified that, given the "level of distortion of his thinking," his impaired cognitive processes, and his "impaired thinking process" off of drugs, "[Defendant's] ability to put things together is not there when he is on amphetamines." Dr. Roll summarized:

Now, from a psychological point of view, that's a diminished capacity to make reasonable choices. I am not making a legal decision of course, or legal position. From the psychological position, this interferes. When you put all of these together, you have someone who is walking around, who looks [like] he is just fine, but has a number of very serious deficits that will diminish his capacity for executive acts. And then, when you combine them with the amphetamines, then you have someone who is assuredly ... going to have some diminished capacities at a very serious level.

{32} We hold that under the circumstances of this case, the district court properly applied the *Volpato* test. Specifically with regard to prongs 2 and 3, which are contested by the State, the evidence demonstrates that Defendant has a diminished capacity to reason on a day-to-day basis, which is greatly exacerbated by methamphetamine and an idiosyncratic type of intoxication that was not

discoverable prior to trial and it could not have been discovered prior to trial with the exercise of due diligence.

{33} The newly discovered evidence is the opinions of the diagnostic experts that Defendant has serious mental deficits including a serious diminished capacity for reasoning and for carrying out executive acts in general, made more severe by an idiosyncratic intoxication from methamphetamine. The State failed to present any evidence challenging the validity or conclusions of either of the two evaluations concerning Defendant. Further, the State does not challenge the fact that Defendant has psychological defects and deficiencies, which interfere with his ability to form specific intent. "When the defendant has advanced evidence that reasonably tends to show an incapacity to form specific intent, the prosecution then has the additional burden of proving the defendant was capable of forming the deliberate intent despite the alleged intoxication or mental disorder." *State v. Balderama*, 2004–NMSC–008, ¶ 38, 135 N.M. 329, 88 P.3d 845. In this case, the jury was not allowed to consider whether Defendant was capable of forming specific intent because the evidence was unknown, and it could not have been discovered prior to trial by the exercise of due diligence. The evidence was discovered only because the district court initially ordered a diagnostic evaluation, which then led to further diagnostic testing.

{34} The district court did not abuse its discretion by granting Defendant a new trial on the basis of this newly discovered evidence on the two crimes requiring specific intent.

## CONCLUSION

{35} We affirm the district court's jurisdiction and its order granting Defendant a new trial on the kidnaping and aggravated assault charges. We decline to address the other issues raised by the State because those issues may or may not be repeated on retrial.

{36} IT IS SO ORDERED.

WE CONCUR: JONATHAN B. SUTIN, Chief Judge and LYNN PICKARD, Judge.