This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40422**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ANTHONY CRUZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Defendant Anthony Cruz appeals his convictions for criminal sexual penetration (CSP) in the third degree, contrary to NMSA 1978, Section 30-9-11(F) (2009); and false imprisonment, contrary to NMSA 1978, Section 30-4-3 (1963). Defendant argues: (1) the district court erred by admitting expert testimony as lay testimony; (2) the district court's accommodations for a hearing impaired juror and a discussion of the accommodations without Defendant's presence resulted in reversible structural error;

(3) Defendant's false imprisonment conviction was incidental to the CSP conviction and therefore his right to be free from double jeopardy was violated; and (4) the district court erred by denying Defendant's motion for a new trial. We affirm.

**BACKGROUND**

**{2}**     Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we set forth only a brief overview of the historical facts of the case. We include discussion of additional facts where necessary to our analysis.

**{3}**     In May 2020, Defendant approached Victim and her boyfriend while they were panhandling. Victim and her boyfriend were homeless, and Victim was addicted to Fentanyl at the time. Defendant told Victim's boyfriend that he was going to give them money for food and pay for a hotel room. Defendant first took Victim and her boyfriend to their broken-down car to retrieve their belongings, and then took them to a hotel, rented a room, and took Victim's boyfriend to buy groceries.

**{4}**     Victim took a shower when Defendant and her boyfriend left because she was beginning to withdraw. Victim propped the hotel door open because Defendant and Victim's boyfriend did not take a hotel key with them. A short time later Defendant entered the bathroom and opened the shower curtain. Defendant prevented Victim from pulling the shower curtain closed to cover herself, grabbed Victim by the back of the head, and began kissing her. Defendant also began to put his hands down Victim's body and grabbed her vagina. Victim attempted to back away and get around Defendant, but Defendant grabbed Victim's shoulders, picked her up, and carried her from the bathroom to the bed. On the bed, Defendant performed oral sex and digitally penetrated Victim vaginally. Defendant then turned Victim around, took off his pants, penetrated her vaginally with his penis, and ejaculated.

**{5}**     Victim went back to the bathroom to put on her clothes and to call her boyfriend. Defendant followed Victim into the bathroom, attempted to take Victim's phone from her, and demanded that she take a shower and clean off. Victim stepped into the shower after Defendant's demand, but then ran from the room as soon as Victim heard Defendant leave. Victim testified that she complied with Defendant's demands because she was afraid.

**{6}**     Defendant was charged with three counts of CSP and one count of kidnapping, contrary to Section 30-9-11(F) and NMSA 1978, Section 30-4-1 (2003). At trial, the State amended the kidnapping charge to one count of false imprisonment. During jury deliberation, a juror's note alleged that one juror had not heard testimony from the first day of trial. Defendant requested that the juror remain on the jury and approved the district court's accommodation of sending the juror home with a copy of the trial audio to ensure he could properly deliberate. The jury convicted Defendant of one count of CSP and false imprisonment. This appeal followed.

**DISCUSSION**

**{7}** We begin our analysis with Defendant's argument that the district court improperly allowed the investigating detective to give an expert opinion during his lay witness testimony. We hold that the district court did not abuse its discretion by allowing the testimony. We next turn to Defendant's arguments that the district court's accommodations for a hearing impaired juror were inadequate, constituted structural error, and that reversal is required. We hold that Defendant's presence at the status hearing, wherein the district court and both counsel discussed whether the juror followed his accommodations, was not required because it was not a critical stage of the proceedings. We decline to address the remainder of Defendant's arguments relating to his absence from the status hearing because Defendant invited the error of which he now complains. We then address Defendant's various arguments that we should vacate his false imprisonment conviction. We hold that the false imprisonment was not incidental to the CSP, and that Defendant's double jeopardy rights were not violated because the conduct was not unitary.[1] Finally, we review Defendant's argument that the district court abused its discretion by denying his motion for a new trial filed approximately six months after his guilty verdicts. We hold that the district court correctly held it did not have jurisdiction to hear the motion under Rule 5-614(C) NMRA.

## I. The District Court's Admission of the Detective's Testimony

**{8}** We review Defendant's argument that the district court improperly allowed the detective to give an expert opinion for an abuse of discretion. *See State v. Vargas*, 2016-NMCA-038, ¶ 10, 368 P.3d 1232 (stating we "review the admission of evidence for an abuse of discretion"). "A court abuses its discretion when its evidentiary rulings indicate a misapprehension of the law." *Id.* We review de novo "[t]he threshold question of whether the trial court applied the correct evidentiary rule or standard." *State v. Carrillo*, 2017-NMSC-023, ¶ 26, 399 P.3d 367 (internal quotation marks and citation omitted).

**{9}** During the detective's direct testimony, the State asked him to explain what a Sexual Assault Nurse Examiner (SANE) examination is and how it relates to law enforcement investigations. The detective responded in part that they are forensic examinations that are conducted by a nurse who is certified. The State then asked, "And in your experience, how often in your cases do victims get SANE exams?" Defendant objected and argued that the State was attempting to elicit expert testimony from a witness who was not qualified as an expert. The district court overruled the objection, and the State restated the question—"In your experience as a sex crimes detective, in what percentage of your cases do people not get SANE exams?" The

---

[1]To the extent that Defendant argues that the false imprisonment charge was not supported by sufficient evidence, this argument is based on Defendant's claims that the charge was either incidental or violated his right to be free from double jeopardy. As such, we resolve Defendant's sufficiency argument within our double jeopardy analysis that the conduct was not unitary.

detective responded, "I would say about one-third of the time they don't appear for the exam."

**{10}** Defendant argues that the detective's testimony—that in about a third of his cases, the victims do not appear for the exam—constituted expert testimony. We disagree. The rules of evidence distinguish between what is an appropriate opinion for expert and lay testimony. *See* Rule 11-701(C) NMRA (stating in part that that lay witness testimony is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 11-702 NMRA"). Lay testimony opinion "is based on personal perception or personal observation by the witness" and is "generally confined to matters which are within the common knowledge and experience of an average person." *Vargas*, 2016-NMCA-038, ¶ 15 (internal quotation marks and citation omitted). Relevant to our analysis here, "testimony moves from lay to expert if an officer is asked to bring [their] law enforcement experience to bear on [their] personal observations and make connections for the jury based on that specialized knowledge." *Id.* ¶ 19 (internal quotation marks and citation omitted).

**{11}** Defendant specifically contends that the district court erred by admitting the detective's answer as lay testimony because it was based on general statistics. Defendant cites to *State v. Duran*, 2015-NMCA-015, 343 P.3d 207 to support his argument. In *Duran*, a S.A.F.E. House forensic interviewer testified about the content of her interview with the victim. *See id.* ¶¶ 4-8 (description of testimony). The forensic interviewer "was not qualified as an expert." *Id.* ¶ 6. Over the defendant's objection, the forensic interviewer testified broadly about the percentage of children who delay reporting sexual abuse at the S.A.F.E. House. *Id.* The forensic interviewer stated, "It's been awhile since I reviewed the statistics, but its greater than 50 percent"; "I was really referring to what I'm remembering about the data. I certainly can't say what percentage of kids I interviewed, because I didn't keep track of that"; and "in the majority of children that I've interviewed at the S.A.F.E. House, there is a delay in disclosure." *Id.* ¶¶ 7-8 (alterations and internal quotation marks omitted).

**{12}** This Court reversed the defendant's conviction, holding that "statements [made] about the behavior of children alleging sexual assault is not a proper subject for lay [person] testimony because it is neither the kind of personal observation that a lay person is capable of making nor common knowledge within the general public." *Id.* ¶ 15. The *Duran* Court explained that the testimony fell outside the scope of lay testimony because the forensic interviewer stated, "[H]er statement on delayed disclosure was based not just on her personal observations, but also on specific statistics compiled in the S.A.F.E. House's specialized work environment." *Id.* ¶ 17. Therefore, the testimony was "based on specialized knowledge and thus should not have been admitted" as lay testimony. *Id.* (internal quotation marks omitted).

**{13}** Based on our review of the statement at issue here, Defendant's reliance on *Duran* is unpersuasive. Rather, this Court's analysis in *Duran* supports the district court's admission of the detective's testimony. Unlike the forensic interviewer's testimony in *Duran*, the detective's testimony did not reference data or a statistical

analysis, nor did he make a connection for the jury based on his specialized knowledge. Rather, the testimony "was simply a recollection of the detective's own sensory observations" regarding how many victims appeared for SANE exams in *his cases*. *Vargas*, 2016-NMCA-038, ¶ 20 (emphasis added). The frequency of an observed event is within "the common knowledge and experience of an average person." *Id.* ¶ 15 (internal quotation marks and citation omitted).

**{14}**　Defendant admits that the detective "did not state that his observations were based on specific compiled statistics" but contends that "his testimony suggested as much." We disagree. The State's question specifically asked for his own personal experience and did not call for the detective to give a broad or general statement about SANE examinations. The detective's statement did not contain any specialized or technical information and did not cross the line into expert testimony. *Cf. id.* ¶ 22 (Thus, [the detective]'s testimony was not simply commentary on observations he witnessed during the investigation, but instead he applied his law enforcement training and experience to make connections for the jury." (internal quotation marks and citation omitted)). Therefore, we hold that the district court did not abuse its discretion by allowing the detective's testimony as a lay witness.

## II.　The District Court's Juror Accommodations

**{15}**　We next turn to Defendant's contention that the district court's accommodations for a hearing impaired juror were inadequate and that conducting a status hearing regarding the accommodations without Defendant's presence requires reversal because the status hearing was a critical stage of the proceedings. On September 9, 2021, about two hours into jury deliberation, the district court notified the parties that it had received a note about a potential problem. The district court stated that a juror "just now notified us that he has not been able to hear the trial, and therefore cannot make a decision" and that the alternative jurors had already been released. The district court proposed three possible solutions: (1) check how far into deliberations the jury was and see if it was possible to call back an alternate; (2) proceed with an eleven person jury if the parties agreed; or (3) question the juror to determine what he missed and have him explain why he did not alert the court to any issues. The district court and the parties agreed to question the juror outside of the presence of the rest of the jury and provide defense counsel an opportunity to discuss the matter with Defendant.

**{16}**　During the district court's questioning, the juror stated that he did not hear the hearing on the very first day. The district court asked the juror if he meant the jury selection process, and the juror, describing aspects of jury selection, clarified that he did not know what was going on. However, the juror stated that he could hear the testimony of the witnesses during trial. Although he heard the witness testimony, the juror could not hear the rest of the jury during deliberations. The only additional question the State and Defendant requested was whether there was a possible accommodation that would allow the juror to continue deliberating. The juror responded that he would be able to go back and continue deliberating on this case if the district court made it easier for the juror to hear the rest of the jury deliberations.

**{17}**     After discussion with the parties, the district court proposed allowing the jury to deliberate in the courtroom, which would enable the juror to use headsets and other audio accommodations. Defense counsel agreed that the juror should be accommodated, and requested that the court allow the jury to continue deliberating in the courtroom. Defense counsel stated that "he was strongly in favor of keeping [the juror] at this time" and even though the juror stated that he did not hear voir dire, defense counsel believed he asked the juror a question and the juror had responded.

**{18}**     The district court then brought the entire jury into the courtroom and read an instruction that both parties approved on how to deliberate in the courtroom with the new accommodation. A few minutes after reading the instruction to the jury, the jury sent a new note to the district court. The note stated that the juror was actually "unable to hear the testimony and evidence until receiving assistance, and even after that, could not hear well." The note ended by asking how the jury could be unanimous under these circumstances.

**{19}**     The district court proposed giving a new instruction stating that the issue had been discussed with the juror and the district court was confident that deliberations could proceed, but stated it was open to other suggestions. During this conversation, the district court received a third note. The note stated that the juror with the hearing difficulty could not hear court proceedings on the morning of September 7, 2021—the first day of trial. The note asked if the juror could rely on discussions during jury deliberations. After discussing the notes with the parties, the district court stated, "We either go with eleven jurors, or I do an instruction saying that the court has resolved this and the chips fall where they fall."

**{20}**     The district court took a recess to enable counsel to discuss the matter with Defendant, after which defense counsel stated that he "did go through all the potential ramifications of the decision here with . . . Defendant . . . and he is in agreement with the instruction that the court proposed to the jurors to move forward with [the juror] in the deliberations." The district court commented that it had thought of another option—pause deliberations, provide a copy of the trial audio to the juror, and instruct the juror to review the entire trial. Defense council agreed that providing trial audio would resolve all issues, but that he preferred to reserve that option as a fallback in the event additional problems came up. After discussion with the parties, the district court created a jury instruction notifying the jury that deliberations would continue the following week on September 14, 2021, after the juror reviewed the trial and voir dire, excluding bench conferences. Both parties approved the new jury instruction.

**{21}**     On September 14, 2021, the district court held a status hearing at the State's request. Defendant was not present and defense council declined the district court's offer to bring Defendant to the hearing. The State asked the district court to question the juror to ensure that he reviewed the audio, that he did not come across something from voir dire that would disqualify him from service, and that he would be able to continue deliberations. Defense council objected, arguing that the juror was present for voir dire,

that the parties had the opportunity to engage the juror, and that the State could have struck him during jury selection. Defense council continued

> with respect to the other issues, if he is now, as we speak, engaged in deliberations with the other jurors, I have a real problem with pulling him out again. Because I think everybody's got everything, you know, figured out or worked out as to how they're going to proceed and accommodate the situation. And unless we get a question from the jury or from that juror in particular, I do not think it would be appropriate after everything that we've been through to disturb this jury if they are currently deliberating.

**{22}** The district court then stated for the record that the juror had listened to the trial audio under the supervision of court staff, stated he had listened to everything he needed to listen to, and that he was ready to deliberate. The district court further stated that it had not heard any information that would disqualify the juror from deliberating based on the questions from voir dire. Defense council requested an opportunity to relay this information to Defendant, but declined the district court's offer to redo the status hearing with Defendant present. Rather, Defense council stated that he would meet with Defendant separately. The jury deliberated and returned its guilty verdicts.

**{23}** Defendant now argues that the September 14, 2021 status hearing, was a critical stage of the proceedings and his absence created structural error requiring reversal. Defendant also contends that the district court's accommodations for the hearing impaired juror were inadequate because the district court failed to verify whether the hearing impaired juror had reviewed the accommodations, and that the district court's decision to proceed with the juror functionally forced Defendant to proceed with an eleven-person jury, even though he did not waive his right to a twelve-person jury. We first hold that the September 14, 2021 status hearing, was not a critical stage of the proceedings. We decline to address the remainder of Defendant's arguments because Defendant invited the claimed error of which he now complains.

## A.    The Status Hearing Was Not a Critical Stage of the Proceedings

**{24}** "There is no dispute that a criminal defendant charged with a felony has a constitutional right to be present and to have the assistance of an attorney at all critical stages of a trial." *State v. Sloan*, 2019-NMSC-019, ¶ 9, 453 P.3d 401 (internal quotation marks and citation omitted). Critical stages "of a criminal proceeding include any stage in which the defendant's presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Id.* ¶ 10 (text only) (citation omitted).

**{25}** Defendant argues that we review his critical stage argument for structural error, or harmless error in the alternative. Defense counsel did not object to Defendant's absence at the September 14, 2021, status hearing and instead rejected the district court's offer to redo the hearing in Defendant's presence. Defendant therefore failed to preserve this issue for our review. *See* Rule 12-321(A) NMRA. As such, we review this claim for fundamental error. *See State v. Astorga*, 2016-NMCA-015, ¶ 3, 365 P.3d 53

(reviewing the defendant's unpreserved argument that he was absent from a critical stage of his trial for fundamental error).

**{26}** Fundamental error is case specific, and requires a defendant to "demonstrate that any error goes to the foundation of the case or takes away a right that was essential to the defense and which no court could or ought to permit him to waive." *Id.* ¶ 4 (internal quotation marks and citation omitted). "The burden of demonstrating fundamental error is on the party alleging it, and the standard of review for reversal for fundamental error is an exacting one." *Id.* ¶ 5 (internal quotation marks and citations omitted). A defendant "must demonstrate prejudice from the errors he alleges; absent a showing of prejudice, [a d]efendant cannot demonstrate error, let alone fundamental error, which we require for unpreserved claims." *Id.* "[O]ur decision depends on whether the situations of which [a d]efendant complains rise to the level of calling the process of the trial into question to an extent sufficient to hold that its result cannot be sustained on appeal." *Id.*

**{27}** Defendant first argues that we should view the status hearing as an extension of the jury selection process because the hearing involved a discussion regarding the juror's ability to deliberate. Defendant argues, and we agree, that "jury selection is considered a critical stage." *Id.* ¶ 19. But we disagree that the status hearing was akin to jury selection. "The process of voir dire where a defendant and his counsel are face-to-face with the jurors, attempting to read the reaction of jurors to the lawyer and client is the critical stage for which our Supreme Court recognized a right to the defendant's presence." *Id.* ¶ 20 (internal quotation marks and citation omitted). The juror was not present at the status hearing on September 14, 2021, and therefore would not have been "face-to-face" with Defendant. *See id.* Therefore, we decline to view the September 14, 2021, status hearing as an extension of jury selection. Instead, the juror's ability to deliberate was discussed at the hearing on September 9, 2021, which Defendant attended. During that hearing, Defendant ultimately pushed to keep the juror on the jury during deliberations.

**{28}** Alternatively, Defendant argues that the status hearing was a critical stage of the proceedings because it directly impacted his ability to present a defense. Defendant makes no argument as to how his absence from the hearing prejudiced his defense. Instead Derfendant posits that he "might have agreed with the State that [the juror] should [have been] questioned again" despite his counsel's objection to questioning the juror, and that we should not consider defense counsel's objection to any further inquiry of the juror during our review. We are unpersuaded by this argument because it is too speculative to establish that his absence at the September 14, 2021, status hearing impaired his defense. *See State v. Gardner*, 2003-NMCA-107, ¶ 29, 134 N.M. 294, 76 P.3d 47 ("[The d]efendant presents only speculative arguments about prejudice to his defense. In the absence of actual prejudice, we find no error.").

**{29}** Therefore, we hold that the September 14, 2021, status hearing was not a critical stage of Defendant's trial. As such, Defendant's absence at the status hearing does not amount to fundamental error requiring reversal. *See Sloan*, 2019-NMSC-019, ¶ 13 ("If a

hearing was not a critical stage and our rules did not require [the d]efendant's presence, his right to be present was not violated.").

## B.    Defendant Invited the Error of Which He Now Complains

**{30}**    Defendant argues the district court's accommodations, its subsequent failure to verify that the juror understood and was capable of evaluating all the evidence, and decision to proceed with the juror all require reversal. However, Defendant contributed to each of these conditions of which he now complains. Defendant approved the district court's accommodations and requested that the case proceed with the juror at issue. Additionally, defense counsel objected to verifying whether the accommodations were followed. Regardless, the district court did notify the parties that the juror was prepared to deliberate and that the juror had reviewed the proceedings he needed to hear at the courthouse. "To allow a defendant to invite error and to subsequently complain about that very error would subvert the orderly and equitable administration of justice." *State v. Handa*, 1995-NMCA-042, ¶ 35, 120 N.M. 38, 897 P.2d 225 (text only) (citation omitted). "Furthermore, the doctrine of fundamental error has no application in cases where the defendant, by his own actions, invites error." *Id.*

**{31}**    Defendant contends we should not apply the doctrine of invited error because there was no gamesmanship before the district court. We disagree because gamesmanship is not a requirement prior to applying the doctrine of invited error. Rather, we apply invited error to situations—like here—where a defendant is responsible for the error that he complains of on appeal, whether or not gamesmanship was involved. *See id.* ¶ 35. We therefore decline to reach the merits of these arguments because Defendant invited the error of which he now complains.

## III.    Defendant's False Imprisonment Conviction

**{32}**    We next address Defendant's arguments that we should reverse his false imprisonment conviction because it was incidental to his CSP conviction and therefore violated his right to be free from double jeopardy. We hold that Defendant's false imprisonment conviction was not incidental to his CSP conviction and did not violate Defendant's double jeopardy rights. We explain.

## A.    False Imprisonment Was Not Incidental to the CSP Charge

**{33}**    Citing to this court's analysis in *State v. Trujillo*, 2012-NMCA-112, 289 P.3d 238, Defendant first argues that his conviction for false imprisonment should be vacated because the restraint for false imprisonment was incidental to the CSP charge. In *Trujillo*, "[the d]efendant was convicted of aggravated burglary, conspiracy to commit aggravated burglary, aggravated battery, conspiracy to commit aggravated battery, kidnapping, and false imprisonment." *Id.* ¶ 4. On appeal, the defendant challenged his kidnapping conviction, arguing that the kidnapping conviction was based on restraint that was incidental to the aggravated battery. *Id.* ¶¶ 5-6. The *Trujillo* Court agreed, and

concluded "that the Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime." *Id.* ¶ 39.

**{34}** Because false imprisonment is a lesser included offense to kidnapping and involves the same actus reus, Defendant argues that the *Trujillo* analysis should apply equally to both crimes. We disagree. This Court's analysis in *Trujillo* applies strictly to the offense of kidnapping and not the lesser-included offense of false imprisonment. *See id.* ¶¶ 23-30 (reviewing the history of kidnapping statutes and the nature of the offense, reviewing the history of New Mexico's kidnapping statute, and highlighting the distinction between the kidnapping and false imprisonment statutes and the elements required for each offense); *see also id.* ¶¶ 39-42 (concluding that "the Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime" while emphasizing that the conclusion was based on the "factual circumstances of this case").

**{35}** This Court has repeatedly declined to extend the *Trujillo* analysis to false imprisonment and has concluded that *Trujillo* applies exclusively to kidnapping. *See, e.g.*, *State v. Dimas*, A-1-CA-37009, mem. op. ¶¶ 19-20 (N.M. Ct. App. Apr. 27, 2020) (nonprecedential) (noting that *Trujillo* has never been applied to false imprisonment and that *Trujillo* "distinguish[ed] kidnapping from the lesser included offense of false imprisonment" based on considerations specific to kidnapping); *State v. Martinez*, A-1-CA-34992, mem. op. ¶ 36 (N.M. Ct. App. Feb. 7, 2018) (nonprecedential) (stating "we note that *Trujillo* is inapplicable to this case because it pertains specifically and exclusively to the offense of kidnapping" in response to the defendant's argument that *Trujillo* should apply to his false imprisonment conviction).

**{36}** Defendant has not persuaded us that under the circumstances here we should expand *Trujillo* to false imprisonment, and we decline to consider this argument further. We therefore hold that the false imprisonment conviction was not incidental to the CSP conviction.

## B.     Defendant's Double Jeopardy Rights Were Not Violated

**{37}** Defendant alternatively argues that his false imprisonment conviction violated his double jeopardy rights because the false imprisonment charge and CSP charge were based on unitary conduct. Defendant argues that any confinement that occurred was unitary and fell within the CSP conduct. We disagree and explain.

**{38}** "Double jeopardy protects against multiple punishments for the same offense." *State v. Silvas*, 2015-NMSC-006, ¶ 8, 343 P.3d 616. Defendant was convicted of two separate crimes each defined by different statutes, therefore this is a double-description case. *Id.* We review a claim of double jeopardy de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747.

**{39}** This Court has long applied a two-part test when analyzing double description claims. "First, the defendant's conduct must be unitary," and if it is not, "the analysis

ends and double jeopardy does not apply." *Silvas*, 2015-NMSC-006, ¶ 9. Second, only if the conduct is unitary, then we must "determine if the Legislature intended to punish the offenses separately." *Id.* "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.* (internal quotation marks and citation omitted).

**{40}** Conduct is not unitary when "the jury reasonably could have inferred independent factual bases for the charged offenses." *State v. Melendrez*, 2014-NMCA-062, ¶ 8, 326 P.3d 1126 (internal quotation marks and citation omitted). "In our consideration of whether conduct is unitary, we have looked for an identifiable point at which one of the charged crimes had been completed and the other not yet committed." *State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61. "[W]hen reviewing whether conduct is unitary in the double jeopardy context, we indulge in all presumptions in favor of the verdict." *State v. Herrera*, 2015-NMCA-116, ¶ 12, 362 P.3d 167 (internal quotation marks and citation omitted).[2]

**{41}** Our review shows that Defendant's false imprisonment and CSP convictions were not based on unitary conduct because each conviction was premised on separate and distinct acts. The jury instruction for false imprisonment required the jury to find, in relevant part, (1) "[D]efendant restrained or confined [Victim] against her will"; and (2) "[D]efendant knew that he had no authority to restrain [Victim]." In contrast, the jury instruction for CSP required, in relevant part, (1) "[D]efendant caused [Victim] to engage in sexual intercourse"; and (2) "[D]efendant caused [Victim] to engage in sexual intercourse through the use of physical force or physical violence."

**{42}** Victim testified that Defendant entered the bathroom while she was taking a shower, grabbed her by the back of the head, and prevented her from leaving. Defendant then grabbed her, carried her against her will to the bedroom, and threw her on the bed. Based on this testimony, a reasonably juror could infer and conclude that Defendant intentionally restrained Victim against her will based upon Defendant's actions while Victim was in the shower. *See State v. Barrera*, 2002-NMCA-098, ¶ 11, 132 N.M. 707, 54 P.3d 548 ("[W]hen a defendant's underlying acts are unlawful, it may be inferred that the defendant knows, too, that he has no lawful authority to restrain the victim in the commission of those unlawful acts."). We have held that similar evidence supported a conviction of false imprisonment. *See State v. Corneau*, 1989-NMCA-040, ¶ 13, 109 N.M. 81, 781 P.2d 1159 (concluding that the defendant's acts of threatening the victim, and then dragging her from the living room to the bedroom where the CSP occurred satisfied the elements of false imprisonment). Therefore, we hold that Defendant's conviction for false imprisonment was supported by sufficient evidence separate and distinct from Defendant's conviction for CSP.

---

2To the extent that Defendant also challenges whether sufficient evidence supports his false imprisonment conviction, our analysis on review is the same. *See State v. Hixon*, 2023-NMCA-048, ¶¶ 44-45, 534 P.3d 235 ("We view the evidence in the light most favorable to the guilty verdict, indulging in all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." (internal quotation marks and citation omitted)).

**{43}** Although this conduct preceeded the conduct leading to the CSP, the restraint required for false imprisonment "need be for only a brief time." *See id.* ¶ 12. Here, Defendant's actions of entering the bathroom, preventing Victim from leaving, and then grabbing Victim and throwing her on the bed created a distinct restraint than the restrain used to commit CSP. *See id.* ¶ 16 ("[O]n the facts we have before us, the restraint which proceeded the act of CSP was not the same 'force or coercion' necessary to establish CSP, or the same restrain inherent in CSP."); *see also State v. Dominguez*, 2014-NMCA-064, ¶ 10, 327 P.3d 1092 ("That [the d]efendant used the same *type* of force to restrain [the v]ictim during the kidnapping and during the CSP does not create unitary conduct out of the independent and factually distinct bases for these crimes.").

**{44}** Defendant cites to *State v. Crain* to support his claim that the conduct was unitary, but his reliance on *Crain* is misplaced. In *Crain,* this Court held "[b]ecause both forms of CSP II and the kidnapping charge involve the use of force during the same act of sexual intercourse, we conclude that the conduct underlying all of Defendant's convictions is unitary." 1997-NMCA-101, ¶ 17, 124 N.M. 84, 946 P.2d 1095; *see also State v. Fielder*, 2005-NMCA-108, ¶¶ 32-33, 138 N.M. 244, 118 P.3d 752 (explaining that the holding in *Crain* there was a double jeopardy violation that was specifically based on the seriousness of the offenses and how one count of CSP was based on the kidnapping charge). The facts in this case demonstrated an act of false imprisonment took place prior to the CSP.

**{45}** Based on the foregoing, we conclude that Defendant's false imprisonment and CSP convictions were not based on unitary conduct and therefore we do not continue to the second step of our double jeopardy analysis. *See Silvas*, 2015-NMSC-006, ¶ 8. We hold that Defendant's convictions did not violate Defendant's double jeopardy rights.

## IV.    Defendant's Motion for a New Trial

**{46}** Finally, we address Defendant's argument that the district court erred by denying his motion to set aside the verdict and for a new trial, filed more than six months after a jury convicted him. Defendant raised two issues in support of his motion for a new trial: (1) improper influence during jury deliberations by the jury foreman; and (2) intimidation of Defendant by State witnesses to prevent Defendant's testimony at trial. Citing Rule 5-614, the State responded in relevant part that the grounds for a new trial did not consist of new information and therefore the motion was untimely and the district court lacked jurisdiction to rule on the motion.

**{47}** The district court denied the motion, because the issues were known and therefore the motion should have been filed within ten days of the verdict. The district court entered an order denying the motion for lack of jurisdiction because the motion did not comply with the time requirements of Rule 5-614. The State asserts that the district court lacked jurisdiction to rule on Defendant's untimely motion.

**{48}** "Generally, an appellate court will not disturb the district court's exercise of discretion in denying or granting a motion for a new trial unless there is a manifest

abuse of discretion." *State v. Bryant*, 2023-NMCA-016, ¶ 39, 525 P.3d 367 (text only) (citation omitted), *cert. denied*, 2023-NMCERT-002 (S-1-SC-39550). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). We review the district court's decision that it lacked jurisdiction to hear Defendant's motion de novo. *See State v. Moreland*, 2007-NMCA-047, ¶ 9, 141 N.M. 549, 157 P.3d 728 ("The question of whether the district court had jurisdiction to grant [the d]efendant's motion for [a] new trial presents a question of law, which we review de novo.").

**{49}**    Rule 5-614(C) states that a "motion for new trial based on the ground of newly discovered evidence may be made only before final judgment, or within two (2) years thereafter." Otherwise, a "motion for new trial based on any other grounds shall be made within ten (10) days after verdict or finding of guilty or within such further time as the court may fix during the ten (10) day period." *Id.* "[T]he filing requirement in Rule 5-614(C) is jurisdictional." *State v. Lucero*, 2001-NMSC-024, ¶ 9, 130 N.M. 676, 30 P.3d 365.

**{50}**    Defendant concedes on appeal and at the motion hearing that the threats against him occurred before and during trial. Similarly, Defendant concedes that he learned of the possible improper juror influence shortly after the jury returned its verdict. As such, the district court did not abuse its discretion by finding that Defendant failed to provide newly discovered evidence or err in determining that Defendant did not comply with the ten-day filing requirement under Rule 5-614(C). Therefore, we affirm the district court's denial of Defendant's motion for a new trial on jurisdictional grounds.

**CONCLUSION**

**{51}**    For the foregoing reasons, we affirm Defendant's convictions.

**{52}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**RICHARD C. BOSSON, Justice,
Retired, sitting by Designation**